Filed 2/24/15  P. v. Loeza CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048660 |
| v. | (Super. Ct. No. 12CF1411) |
| EDUARDO ORTIZ LOEZA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Thomas M. Goethals, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

A jury found Eduardo Ortiz Loeza guilty under count 1 of attempted forcible oral copulation (Pen. Code, §§ 288a, subd. (c)(2), 664, subd. (a)), under count 2 of sexual battery by restraint (*id.*, § 243.4, subd. (a)), and under count 3 of misdemeanor simple assault[1] (*id.*, § 242) as a lesser included offense of the charged offense of assault of a minor with the intent to commit a sexual offense (*id.*, § 220, subd. (a)(2)).  The trial court sentenced Loeza to a term of three years on count 2, with a concurrent term of three years on count 1, and suspended imposition of sentence on count 3.

Loeza argues his conviction for simple assault must be reversed because it is a lesser included offense of sexual battery by restraint, for which he was convicted under count 2.  He also argues he should receive one more day of presentence custody credit because Penal Code section 4019, subdivision (f) (section 4019(f)) must be interpreted as authorizing one day of presentence conduct credit for each day of actual presentence custody.

We conclude, under the evidence presented, misdemeanor simple assault is a lesser included offense of sexual battery by restraint and, therefore, Loeza's conviction under count 3 must be reversed.  We also conclude that section 4019(f) authorizes two days of presentence conduct credit for every two days of actual custody and, therefore, Loeza is not entitled to an additional day of presentence custody credit.  Our interpretation of section 4019(f), which is based on its plain and unambiguous language, does not violate equal protection.

Accordingly, we reverse the conviction under count 3, remand with directions to modify the judgment to award Loeza 414 days of presentence conduct credit, and in all other respects affirm.

---

[1] The jury verdict found Loeza guilty of "SIMPLE ASSAULT" in violation of Penal Code section 242, which defines *battery*.  The jury was instructed on simple assault under Penal Code sections 240 and 241, subdivision (a).

## FACTS

Loeza lived with his girlfriend and their son in her parent's three-bedroom house. Loeza and his girlfriend shared one bedroom. The girlfriend's sister, M.Q., lived in the same house and slept in a different bedroom.

On May 10, 2012 at 2:30 a.m., while half asleep, M.Q. heard a knock on her bedroom door. She got out of bed and opened the door to find Loeza standing outside. He told her to let him sleep in her bedroom. When she said no, he put his foot in the door so she could not close it. He pulled out a knife, forced himself into the room, and locked the door behind him.

With the door locked, Loeza repeatedly told M.Q. he desired her. She told him to leave and reminded him that he was her sister's boyfriend and that he had a son. Loeza told M.Q. to sit on the bed. She complied because she was afraid he would hurt her. Loeza touched M.Q.'s arms and legs and kissed her. When she tried to push him away, he told her, "don't get me mad" and threatened her with the knife. He began to caress her bottom. He lifted M.Q.'s shirt, reached under her bra, and touched her breast. M.Q. told Loeza she was having her menstrual cycle and placed a teddy bear on her lap to deflect his advances. He tried pulling the teddy bear away and told her he wanted to have sex with her.

Loeza pulled down his pants and exposed his erect penis. He grabbed M.Q.'s hand, placed it on his penis, and told her to move her hand back and forth. When M.Q. tried to pull her hand away, Loeza threatened her by saying, "don't get me mad."

Loeza told M.Q. to put her mouth on his penis. She said no and resisted. He grabbed her head and pulled it toward his penis. She kept pushing away until he let go of her head. Then, a noise startled Loeza. He pulled his pants up and told M.Q. that if she told anybody what he had done, "something was going to happen" to her family.

DISCUSSION

## I.

## Misdemeanor Assault Conviction

The jury found Loeza guilty under count 3 of simple assault as a lesser included offense of the charged offense of assault of a minor with intent to commit a sexual offense. Loeza seeks reversal of that conviction on the ground it was also a lesser included offense of count 2 (sexual battery by restraint).

A defendant cannot be convicted of both an offense and a lesser offense necessarily included within that offense based on his or her commission of the identical act. (*People v. Sanchez* (2001) 24 Cal.4th 983, 987.) "When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) A lesser offense is necessarily included in the charged offense if either the "'elements'" test or the "'accusatory pleading'" test is met. (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) The elements test is satisfied if all of the elements of the lesser offense are included in the elements of the greater offense. (*Ibid.*) "[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." (*Ibid.*)

Simple assault can be a lesser included offense of sexual battery by restraint. (*People v. Carapeli* (1988) 201 Cal.App.3d 589 (*Carapeli*).) In *Carapeli*, the victim agreed to give the defendant a ride to his home. (*Id.* at p. 591.) At one point, before the car came to a complete stop, the defendant crawled on top of the victim and, while she tried to set the emergency brake, tried to kiss her, and placed one hand down her blouse and the other hand up her skirt. (*Id.* at p. 592.) Although the victim resisted, the defendant managed to touch her breasts and vaginal area. (*Ibid.*) The victim ran from

4

the car and screamed for help.  (*Ibid.*)  The defendant ran after her, caught her, threw her over his shoulder and carried her to some bushes, where he threw her down and got on top of her.  (*Ibid.*)  The defendant again touched her breasts and vaginal area.  The victim asked the defendant to get off her so she could remove a rock pressing against her back.  (*Ibid.*)  When he lifted up his body, the victim rolled out from under him and ran to the car.  After a scuffle with the defendant, who had run after her, the victim was able to drive away.  (*Ibid.*)

In *Carapeli*, *supra*, 201 Cal.App.3d at page 591, the jury convicted the defendant of assault with intent to commit rape and sexual battery by restraint (corresponding to counts 3 and 2, respectively, in this case).  On appeal, the defendant argued the trial court erred in its response to a jury question asking whether the jury could find the defendant guilty of sexual battery, not guilty of assault with intent to commit rape, and guilty of simple assault as a lesser included offense.  (*Id.* at p. 595.)  The court responded that the jury might find the defendant guilty of sexual battery, not guilty of assault with intent to commit rape, and not guilty of the lesser included offense of assault "'because in order to find him guilty of the [lesser included offense] assault you have to find him not guilty on both counts.'"  (*Ibid.*)  The Court of Appeal held that response was correct.  (*Ibid.*)  If the jury had returned a guilty verdict on simple assault as a lesser included offense of assault with intent to commit rape, and a guilty verdict on sexual battery, the jury verdicts would violate the rule that multiple convictions are prohibited when one offense is necessarily included in the other.  (*Id.* at pp. 595-596.)

*Carapeli* is analogous except in one respect.  Here, whether simple assault is a lesser included offense of sexual battery by restraint under count 2 depends upon which acts were the basis for each count.  Count 2 charged Loeza with violation of Penal Code section 243.4, subdivision (a), which punishes sexual battery when the accused "touches *an intimate part* of another person while that person is unlawfully restrained" for purposes of sexual arousal or gratification.  (Italics added.)  Loeza and the Attorney

5

General agree the prosecution elected to base count 2 on two acts of touching an intimate part: (1) Loeza touching M.Q.'s breast, and (2) Loeza forcing M.Q. to touch his penis.

As the basis for the assault alleged in count 3, Loeza argues the prosecution elected to rely on all of his acts of touching up to the point when M.Q. said she was having her menstrual period. Those acts, Loeza contends, constituted a continuous course of conduct that included touching M.Q.'s breast and, therefore, count 3 necessarily was included within count 2. The Attorney General argues the prosecution elected to base the assault charged in count 3 on only two acts: (1) Loeza kissing M.Q., and (2) Loeza caressing M.Q.'s bottom. Since neither of those acts is the same as either act alleged as the basis for count 2, the Attorney General argues simple assault under count 3 is not a lesser included offense of count 2 and "the record shows the offense of simple assault arose from conduct that was separate and divisible from the conduct which formed the basis for the offense of sexual battery by restraint."

The jury was instructed to consider simple assault if it found Loeza not guilty on either count 2 or count 3 and that a simple assault occurs when the defendant willfully applies "force," which means "to touch in a harmful or offensive manner." The instruction did not identify any specific acts of touching by Loeza.

Both Loeza and the Attorney General turn to the prosecutor's closing argument to determine the factual basis for count 3. In closing argument, the prosecutor explained that count 2, sexual battery by restraint, required that Loeza had touched an intimate part of M.Q. or that she had touched an intimate part of him. The prosecutor argued: "M[.Q.] told us he touched her under the bra. And he also forced M[.Q.] to touch his penis, and we know that again because both M[.Q.] told us and the defendant admitted to it when he was being interviewed by Officer Castro. And we don't need both. We don't need him to have touched her breast and her to have touched his penis. We need one or the other, but in this case we have both."

6

In addressing the elements of count 3 (assault of a minor with the intent to commit a sexual offense), the prosecutor explained that "application of force" can mean "even the slightest bit of touching, as long as that touching was done in an offensive manner." The prosecutor then argued: "I don't think there's anything more offensive than having a man touch you [who] you don't want touching you. To touch you on your inner thighs. To touch you on your vagina. To touch your breast. To kiss you, caress you. To do things to you that you do not want done to you. There is nothing more offensive that one can do to touch you. [¶] And he did that act willfully."

Loeza argues the above quoted passage establishes the prosecutor elected to base count 3 on all the offensive touchings committed against M.Q. The Attorney General argues the above quoted passage is only a list of the types of touching that could hypothetically constitute the crime of assault of a minor with the intent to commit a sexual offense, the offense charged in count 2.

We conclude the better reading of the prosecutor's closing argument is the description of offensive touchings was not intended to be a hypothetical list of possibilities. Rather, the prosecutor was identifying the acts of offensive touching committed by Loeza, which included touching M.Q.'s breast, kissing her, and caressing her, which constituted the factual basis for count 3. After describing the offensive touchings, the prosecutor stated, "[a]nd he did *that act* willfully." (Italics added.) As Loeza argues, there was evidence in the record that he touched M.Q.'s vagina over her clothing, he kissed M.Q., he touched her thigh, and he touched the parts of M.Q.'s body that were swabbed for DNA (which included M.Q.'s front thigh). Those were the acts described by the prosecutor in closing argument.

The prosecutor also argued: "And did he know that his actions would result in the application of force? Of course he did. He did it. He touched her. He knew what he was doing was offensive because she told him it was. She kept saying no. She kept pushing his hands away from her body. He knew what he was doing was offensive."

7

By referring to Loeza's "actions" and to M.Q.'s response, this passage supports the conclusion the prosecutor based count 3 on all of the offensive touchings.

The Attorney General argues count 3 was based only on Loeza kissing M.Q. and caressing her bottom because the prosecutor stated in closing argument: "He kisses her. He caressed her. He tries to seduce her. With a knife sitting right next to him. With the knife always in sight. With the knife always readily available. And he keeps grabbing the teddy bear that M[.Q.] put in between her legs." The prosecutor did not specify which body parts Loeza "caressed," and that term could include touching M.Q.'s breast. During cross-examination, M.Q. was asked whether Loeza "did caress other parts of your body." She answered yes, "he lifted up my shirt and went under my bra."

When the prosecutor presented his closing argument on count 3, he was arguing for conviction on the charged offense of assault of a minor with the intent to commit a sexual offense. The prosecutor acknowledged there were lesser included offenses, but argued, "[t]hey don't apply" because "[t]his isn't a simple assault." Thus, the prosecutor was not electing specific instances on which to base a charge of misdemeanor assault; instead, the prosecutor was arguing Loeza engaged in a course of assaultive conduct with the intent to commit a sexual offense on M.Q. The prosecutor's closing argument, viewed as a whole, supports our conclusion the prosecutor did not elect to limit count 3 to the acts of kissing M.Q. and caressing her buttocks.

Based on the evidence presented at trial and the prosecutor's closing argument, the offense of simple assault, as a lesser included offense of count 3, was also a lesser included offense of count 2. The conviction under count 3 for misdemeanor assault therefore must be reversed. As we are reversing the conviction on count 3, we do not address whether the trial court erred in suspending sentence on that count.

8

## II.

## Presentence Custody Credit

A. *Calculating the Number of Days of Presentence Conduct Credit*

In calculating Loeza's presentence custody credit, the trial court relied on Penal Code section 2933.1 to limit his accrual of credit to 15 percent of actual time served. Loeza was granted 415 actual presentence custody days plus 62 days of presentence conduct credit under Penal Code section 4019 (as limited by section 2933.1) for a total of 477 days.

Loeza and the Attorney General agree the trial court erred by limiting Loeza's accrual of presentence conduct credit to 15 percent of actual days under Penal Code section 2933.1 because he was not convicted of a violent felony under Penal Code section 667.5, subdivision (c). Loeza and the Attorney General also agree that presentence conduct credit must be calculated under section 4019(f), but they disagree over the number of days of conduct credit produced by the statutory formula. Loeza argues he is entitled to 415 days of presentence conduct credit based on one day of credit for each day served in custody. The Attorney General argues Loeza is entitled to 414 days of presentence conduct credit based on two days of credit for every two days served in custody.

To determine whether Loeza gets one more day of presentence custody credit, we must interpret section 4019(f)). Our task is to discern the Legislature's intent, first by considering the language of that statute. (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) If the statutory language is unambiguous, the plain meaning controls and consideration of extrinsic sources to determine the Legislature's intent is unnecessary. (*Kavanaugh v. West Sonoma County Union High School Dist*. (2003) 29 Cal.4th 911, 919.)

9

Section 4019(f) states:  "It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody."  The statutory language expressly and clearly declares the Legislature's intent that four days will be deemed served for every two days in actual custody.  If the Legislature intended to award one day of credit for each in custody—the one-for-one formula argued by Loeza—the Legislature could have said so quite easily.  Because section 4019(f) is not in the least ambiguous, we need not turn to extrinsic sources to aid in our interpretation of it.  (*Smith v. Superior Court*, *supra*, 39 Cal.4th at p. 83.)

The two days of presentence conduct credit authorized by section 4019(f) are the sum of the one day of credit authorized by Penal Code section 4019, subdivision (b) (section 4019(b)) and the one day of credit authorized by section 4019, subdivision (c) (section 4019(c)).  Section 4019(b) provides that "for each four-day period in which a prisoner is confined in or committed to a facility," one day will be deducted from the term of confinement unless the prisoner has refused to satisfactorily perform assigned labor.  Section 4019(c) provides that "[f]or each four-day period in which a prisoner is confined in or committed to a facility," one day will be deducted from the term of confinement unless the prisoner has not satisfactorily complied with rules and regulations.  As both section 4019(b) and section 4019(c) authorize one day of credit for each four-day period of confinement, section 4019(f) must be interpreted to authorize two days of credit for each four-day period of confinement.

In *People v. King* (1992) 3 Cal.App.4th 882, 885 (*King*), the Court of Appeal interpreted a prior version of section 4019(f) that provided, "'[i]f all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody.'"  In *King*, the defendant had 47 actual days of presentence custody credit and was granted 22 days of presentence conduct credit under former section 4019(f), for a total of 69 days.  (*King*, *supra*, at p. 884.)  The defendant

10

contended he was entitled to two more days of conduct credit based on a formula in which the number of actual custody days is divided by two, adding the product to the actual custody days, and rounding up (47 ÷ 2 = 23.5, 47 + 23.5 = 70.5, rounded up to 71). (*Id.* at pp. 884-885.) Another formula, used by some courts, was to multiply by 1.5 the actual custody days and rounding up (hence, 47 x 1.5 = 70.5, rounded up to 71). (*Id.* at p. 885.) The Court of Appeal rejected both formulas as inconsistent with the plain language of former section 4019(f), under which "[c]redits are given for increments of four days" and "[n]o credit is awarded for anything less." (*King*, *supra*, at p. 885.) "Thus, for his 47 days of actual custody, defendant is entitled to 22 days of conduct credit . . . and no additional credit for the extra 3 days." (*Ibid.*; see *People v. Guillen* (1994) 25 Cal.App.4th 756, 764 ["[The defendant's] worktime, good conduct credit is derived by dividing the days of actual custody by four, not by rounding up fractional numbers, and multiplying the result by two."].)

King cited *People v. Smith* (1989) 211 Cal.App.3d 523 (*Smith*), in which the Court of Appeal addressed the same six-days-for-four-days formula of former section 4019(f). The Court of Appeal concluded that "[c]redits are given in increments of four days." (*Smith*, *supra*, at p. 527.) The court calculated presentence custody credit by dividing the 211 actual custody days by four, which "is the equivalent to fifty-two sets of four days, with three extra." (*Ibid.*) The court multiplied 52 by two, to produce 104 days of conduct credit. (*Ibid.*) The defendant was not entitled to conduct credit for the extra three days of actual custody. (*Ibid.*)

The California Supreme Court, in *In re Marquez* (2003) 30 Cal.4th 14, 25-26, approved the *Smith* method of calculating custody credit under former section 4019(f). The Supreme Court explained: "Employing this approach, we take the number of actual custody days (4 + 113 + 113 = 230) and divide by 4 (discarding any remainder), which leaves 57 (230 ÷ 4 = 57). We then multiply the result by 2 (57 x 2 = 114), resulting in a total of 114 days of conduct credit. To arrive at the total amount of

11

credit to which petitioner is entitled (custody plus conduct), we add the custody credit (230 days) to the conduct credit (114 days), giving us a total of 344 days (230 + 114)." (*In re Marquez*, *supra*, at p. 26.)

Current section 4019(f) is drafted in the same format as former section 4019(f) and therefore should be interpreted and applied in same way, substituting the number "two" for the number "four." Applying the formula approved by the Supreme Court in *In re Marquez*, we take the number of Loeza's actual presentence custody days (415) and divide by two (discarding the remainder), which is 207 (415 ÷ 2 = 207.5, rounded down to 207). We then multiply the 207 by two, resulting in a total of 414 days of conduct credit. To arrive at the total amount of credit to which Loeza is entitled, we add the actual custody credit of 415 days to the conduct credit of 414 days, producing a total of 829 days.

B. *Equal Protection*

Under section 4019(f), a defendant with an odd number of presentence actual custody days will receive one less day of presentence custody credit than a defendant having the next higher even number of presentence actual custody days, and the same number of presentence custody credit as a defendant having the next lower even number of presentence custody days. For example, Loeza with 415 actual presentence custody days, will receive one less day of presentence custody credit than a defendant with 416 actual custody days, and the same number of presentence custody credit as a defendant having 414 actual custody days. For that reason, Loeza contends section 4019(f) denies him equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution.

"'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more

12

*similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)

The two similarly situated groups, Loeza argues, are defendants with an odd number of actual custody days and defendants with an even number of actual custody days. He argues the difference in treatment between those two groups constitutes an equal protection violation.

The court in *People v. Jacobs* (1992) 6 Cal.App.4th 101, 103-104 (*Jacobs*) addressed and rejected a similar equal protection challenge to former section 4019(f). The *Jacobs* court concluded: "Under the Penal Code section 4019 scheme, a detainee is *not* similarly situated to *all* other presentence detainees, as would be the case if a uniform ratio were required for all detainees. Instead, a detainee is similarly situated only to other detainees who have served the same number of days in presentence confinement. [¶] Defendant received the same treatment under Penal Code section 4019 as any other defendant who serves the same number of days in presentence confinement." (*Jacobs*, *supra*, at p. 104.)

We agree with *Jacobs* and conclude Loeza is not similarly situated to defendants having an even number of actual custody days. Loeza argues the reasoning of *Jacobs* is "suspect" because in that case the Court of Appeal interpreted former section 4019(f) as authorizing custody credit only for four-day increments of incarceration. That interpretation of former section 4019(f) was approved, however, by the California Supreme Court in *In re Marquez*, *supra*, 30 Cal.4th 14. Loeza's race analogy is inapt. In the analogy, the White defendant and the Black defendant are being treated differently based on their race, not the number of actual custody days.

Even if defendants with an odd number of actual presentence custody days and defendants with an even number of actual presentence custody days are similarly

13

situated for equal protection purposes, the difference in treatment passes the applicable test. "'In resolving equal protection issues, the United States Supreme Court has used three levels of analysis. Distinctions in statutes that involve suspect classifications or touch upon fundamental interests are subject to strict scrutiny, and can be sustained only if they are necessary to achieve a compelling state interest. Classifications based on gender are subject to an intermediate level of review. But most legislation is tested only to determine if the challenged classification bears a rational relationship to a legitimate state purpose.'" (*In re Smith* (2008) 42 Cal.4th 1251, 1262-1263.)

Personal liberty is a fundamental right. (*People v. Olivas* (1976) 17 Cal.3d 236, 251.) But personal liberty is not at stake in cases of conduct credit because "[Penal Code] section 4019 does not alter the penalty for any crime; a prisoner who earns no conduct credit serves the full sentence originally imposed. Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior." (*People v. Brown* (2012) 54 Cal.4th 314, 325.)

The rational relationship test therefore applies here, and it is met. Under the rational relationship test, we ask whether the challenged classification bears a rational relationship to a legitimate state purpose or, put another way, whether there is any reasonably conceivable state of facts that could provide a rational basis for the classification. (*Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481-482.)

There is a rational basis for the distinction in treatment between defendants with an odd number of actual custody days and defendants with an even number of actual custody days. In *King*, *supra*, 3 Cal.App.4th at page 886, the Court of Appeal, in rejecting an equal protection challenge to former section 4019(f), explained: "Assuming the equal protection clause applies to pretrial detainees held for multiples of four days and those held for periods that are not even multiples of four, we conclude there is a rational basis for the four-day increment method of calculation. [Penal Code

14

s]ection 4019 awards two distinct kinds of credit. Section 4019, subdivision (b) authorizes one day of credit for each four-day period of confinement if the prisoner has performed assigned labor. Section 4019, subdivision (c) authorizes one day of credit for each four-day period of confinement if the prisoner has satisfactorily complied with the rules and regulations of the institution. The Legislature apparently determined the appropriate ratio for awarding each type of compliant behavior is a reduction of sentence by one day for four days of appropriate behavior. The Legislature can rationally reward each type of behavior separately and in whole day increments as a reasonable accommodation to administrative practicality." (See *People v. Ramos* (1996) 50 Cal.App.4th 810, 824 [section 4019 does not violate equal protection "insofar as it awards presentence conduct credits in multiples of four days only"].)

In other words, if section 4019(f) were interpreted to require one-for-one presentence conduct credit, the state would have to award credit under section 4019(b) and under section 4019(c), in half-day increments rather than full-day increments, which would be impractical in administrating. We agree with *King*. Section 4019(f) does not deny Loeza equal protection.

## DISPOSITION

The judgment on count 3 is reversed. The matter is remanded with directions to the trial court to modify the judgment to award Loeza 414 days of presentence conduct credit, in addition to 415 days of actual time served, for a total of 829 days of presentence credit. The trial court is directed to prepare an amended abstract

15

of judgment and forward a certified copy of it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


                                    FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.