[No. S102729. Mar. 27, 2003.]

In re VINCENT MARQUEZ on Habeas Corpus.

## COUNSEL

Arthur Dudley, under appointment by the Supreme Court, for Petitioner Vincent Marquez.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin, Christina V. Vom Saal and James Panetta, Deputy Attorneys General, for Respondent State of California.

## Opinion

**WERDEGAR, J.**—In this case, petitioner Vincent Marquez was convicted in Monterey County of first degree burglary and several prior serious felony conviction enhancements. The court sentenced him to a term of 30 years in prison (later reduced to 25 years), with credit for certain pretrial custody. Thereafter, petitioner's conviction on an earlier unrelated Santa Cruz County case was reversed and the charges dismissed. On petitioner's subsequent petition for a writ of habeas corpus, the Monterey County Superior Court declined to credit him with time spent in custody after he was sentenced in the Santa Cruz County case and before he was sentenced in this case. The question presented is whether the time petitioner spent in local jails awaiting trial and sentencing in this case, after his sentencing in the Santa Cruz County case, can be applied to reduce his sentence. We conclude the answer is yes.

### Facts

Police arrested petitioner in Monterey County on July 8, 1991, on suspicion of first degree burglary. (Pen. Code, § 459; all further statutory references are to the Penal Code unless otherwise noted.) He posted bail and was released from custody on July 11, 1991. Following a preliminary examination, a magistrate held him to answer on the burglary charge. He remained out of custody.

A few days later, on July 23, 1991, police arrested petitioner (then apparently using the name Vincent Ernest Soto) in neighboring Santa Cruz County, again on suspicion of burglary. He has remained in continuous custody from that day. A criminal complaint in Santa Cruz County was filed the next day. Monterey County placed a hold on him on August 21, 1991.[1]

---

[1]Petitioner alleges the hold was placed on him on August 8, 1991; his only evidence for that fact is his own representation to the sentencing court. Although the People allege that Monterey County placed a hold on petitioner on August 21, 1991, no document appears in the record verifying that fact. The People's return filed in Monterey County Superior Court on November 16, 1999, states Monterey County placed a hold on petitioner on August 21, 1991. The People's January 9, 2001, letter brief filed in the Sixth District Court of Appeal, which the appellate court treated as a return, also alleges Monterey County placed a hold on August

Petitioner was thereafter convicted in Santa Cruz County of burglary (§ 459) and assorted enhancement allegations. He was sentenced on December 11, 1991, to 10 years in prison and given credit for 142 days in local custody, representing the time he had spent in Santa Cruz County jail from his July 23 arrest until and including his December 11 sentencing. For reasons that are irrelevant for purposes of the present proceeding, he was subsequently resentenced in Santa Cruz County to 11 years in prison, with two years stayed pending imposition of sentence in Monterey County. The court again granted him 142 days of custody credit.

Petitioner was then rebooked into the Monterey County jail and, in due time, convicted in that county of burglary (§ 459) with multiple prior serious felony allegations (§ 667, subd. (a)). The Monterey County Superior Court sentenced him on April 2, 1992, to 30 years in prison with 229 days of credit, representing 153 days of credit for "actual local time" (that is, time spent in custody in county jail) and 76 days of "local conduct credit" (that is, credit for work and good behavior for that same period of custody, pursuant to § 4019).

Petitioner appealed both convictions. His Monterey County case—the case at hand—as decided first. The Court of Appeal directed the Monterey County Superior Court to modify petitioner's sentence from 30 to 25 years, but otherwise affirmed the judgment. (*People v. Marquez* (1993) 16 Cal.App.4th 115 [20 Cal.Rptr.2d 365] [H009663], disapproved on another ground in *People v. Cuevas* (1995) 12 Cal.4th 252, 275, fn. 5 [48 Cal.Rptr.2d 135, 906 P.2d 1290].) The Monterey County Superior Court did as directed. About two months later, the same appellate court filed an unpublished opinion reversing his Santa Cruz County conviction. (*People v. Soto* (July 21, 1993, H009326).)[2] Following receipt of the remittitur, the Santa Cruz County Superior Court vacated petitioner's sentence and dismissed the charges in the interests of justice. Since that time, petitioner has sought unsuccessfully to be awarded credit against his Monterey County sentence for time he spent in custody between the day he was sentenced in the Santa Cruz County case and the day he was sentenced in the Monterey County case.

---

21, 1991. Petitioner does not expressly dispute that date in his traverse in the appellate court, but seems to assume the hold was placed on August 8. Finally, the Court of Appeal's opinion in this case uses August 21 as the date of the hold, and petitioner did not petition for rehearing. (See Cal. Rules of Court, rule 29(b)(2).) Accordingly, we will use August 21, 1991, as the true date Monterey County officials placed a hold on petitioner.

[2] Petitioner separately requests that we take judicial notice of the court records in both appeals. Evidence Code section 452, subdivision (d) permits this court to notice the "[r]ecords of . . . any court of this state." Accordingly, we grant the request for judicial notice of the court records in *People v. Marquez*, H009663, and *People v. Soto, supra*, H009326.

DISCUSSION

I. *Section 2900.5 Authorizes Credit*

██ Petitioner claims that once his Santa Cruz County conviction was reversed and the case dismissed, the time he spent in custody from the date of the Santa Cruz County sentence to the date he was sentenced in Monterey County became attributable to his Monterey County case. Such credit previously was unavailable because his custody during that period followed his sentencing in the Santa Cruz County case and was thus deemed attributable solely to that case. (*In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789] (*Rojas*).) But once the Court of Appeal reversed his Santa Cruz County conviction and the trial court dismissed the case, petitioner argues, the legal barrier to awarding him credit for such custody to reduce the length of his Monterey County sentence disappeared.

Section 2900.5 is the applicable law. In general, credit is authorized in subdivision (a), which provides in pertinent part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail . . . , all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, and including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his or her term of imprisonment . . . ."

The outcome of the instant case depends on our interpretation of section 2900.5, subdivision (b) (hereafter section 2900.5(b)). It provides in full: "For the purposes of this section, credit shall be given *only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted.* Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (*Ibid.*, italics added.)

As with many determinations of credit, a seemingly simple question can reveal hidden complexities. Although the statutory language in section 2900.5 "may appear to have meaning which is self-evident, the appellate courts have had considerable difficulty in applying the words to novel facts." (*People v. Adrian* (1987) 191 Cal.App.3d 868, 874 [236 Cal.Rptr. 685].) "Probably the only sure consensus among the appellate courts is a recognition that section 2900.5, subdivision (b), is 'difficult to interpret and apply.' [Citation.] As we have noted, in what is surely an understatement, '[c]redit determination is not a simple matter.' " (*Id.* at pp. 874-875.)

██ We reach the proper resolution of this case by way of familiar principles: We assign the statutory language its plain and commonsense

meaning, attempting to effectuate the Legislature's intent. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632-633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) If the statutory language is not ambiguous, we presume the Legislature meant what it said, and we apply the plain meaning of the statute without resort to extrinsic sources. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686].) "In construing a statute, we must also consider ' "the object to be achieved and the evil to be prevented by the legislation." ' [Citation.] And, wherever possible, 'we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute.' " (*Id.* at p. 193.)

██ We turn, then, to whether the "custody to be credited" (§ 2900.5(b)) in this case—the period between the day petitioner was sentenced in Santa Cruz County (Dec. 11, 1991) and the day he was sentenced in Monterey County (Apr. 2, 1992)—can be deemed "attributable to proceedings related to the same conduct for which [petitioner] has been convicted" (*ibid.*), i.e., to the Monterey County proceedings.

Although petitioner had been in custody since July 23, 1991, when he was arrested for his Santa Cruz County crimes, as of August 21, 1991, when Monterey County placed a hold on him, his custody became attributable to the pending criminal charges in *two* counties: Monterey and Santa Cruz. Had Santa Cruz County dropped its charges at that time, petitioner's subsequent custody would have been attributable solely to the Monterey County hold. But Santa Cruz County dropped its charges only later, after petitioner's conviction was reversed. Nevertheless, after Monterey County placed a hold on petitioner, his custody was attributable to the charges in *both* counties. Thus, once Santa Cruz County dismissed its charges, all custody following Monterey County's hold, including the period between petitioner's sentencing in Santa Cruz County and his Monterey County sentencing, is properly characterized as "attributable to [the Monterey County] proceedings related to the same conduct for which the defendant has been convicted." (§ 2900.5(b).) The plain meaning of section 2900.5(b) thus supports petitioner's claim.

To deny petitioner credit for his time spent in custody between December 11, 1991, and April 2, 1992, would render this period "dead time," that is, time spent in custody for which he receives no benefit. Sometimes this result is unavoidable. For example, had petitioner's Santa Cruz County *presentence* custody been attributable solely to the Santa Cruz County charges (that is, had Monterey County never placed a hold), dismissal of the Santa Cruz County charges would have left petitioner with no sentence against which

credit for that period could be applied. But because his custody after placement of the Monterey County hold was attributable to both his Santa Cruz *and* Monterey County cases, dismissal of the Santa Cruz County charges still left him with the Monterey County sentence against which credit for all of his custody from placement of the Monterey County hold until imposition of sentence could be applied.

Our conclusion is consistent with *Rojas, supra,* 23 Cal.3d 152. In *Rojas,* a defendant who was already serving a term for manslaughter was charged with an unrelated murder. He was removed from state prison and placed in local custody to await trial. After his conviction for the murder, he claimed he was entitled to credit against his murder sentence for the time he had spent in county jail awaiting trial. We disagreed, explaining: "There is no reason in law or logic to extend the protection intended to be afforded one merely *charged* with a crime to one already incarcerated and serving his sentence for a first offense who is then charged with a *second* crime. As to the latter individual the deprivation of liberty for which he seeks credit cannot be attributed to the second offense. Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (*Id.* at p. 156.) We further held that, although section 2900.5 does not expressly limit credit to situations where the custody is "exclusively" attributable to a charge of which a defendant is later convicted, "it is clearly provided that credit is to be given 'only where' custody is related to the 'same conduct for which the defendant has been convicted.' The sensible inference is that a defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration." (*Rojas, supra,* at pp. 155-156.)

■ If an offender is in pretrial detention awaiting trial for two unrelated crimes, he ordinarily may receive credit for such custody against only one eventual sentence. Once the pretrial custody is credited against the sentence for one of the crimes, it, in effect, becomes part of the sentence, bringing the case within the embrace of the rule in *Rojas, supra,* 23 Cal.3d 152. In such circumstances, the pretrial custody ceases to be "attributable" to the second crime, thus prohibiting its being credited against the sentence subsequently imposed for that crime. (*People v. Bruner* (1995) 9 Cal.4th 1178, 1189 [40 Cal.Rptr.2d 534, 892 P.2d 1277] (*Bruner*).)

*In re Joyner* (1989) 48 Cal.3d 487 [256 Cal.Rptr. 785, 769 P.2d 967] (*Joyner*) is illustrative. In that case, the defendant was sought in connection with felonies committed in California. He was thereafter arrested in Florida and charged with unrelated felonies there. California authorities then placed a hold on him. Joyner was eventually convicted and sentenced in Florida,

which credited him for time spent in pretrial custody. Following his extradition to California, Joyner pleaded guilty and was sentenced to prison. The trial court denied his request for credit against his California sentence for the time spent in pretrial detention in Florida. We affirmed: "In determining the proceedings to which [his pretrial custody in Florida] may properly be attributed, it is significant that the period has been credited against petitioner's Florida sentences, making it also a period during which petitioner in effect was serving a sentence on another conviction." (*Id.* at p. 492.) Hence, Joyner's pretrial custody came within the rule of *Rojas, supra,* 23 Cal.3d 152, which prohibited its application to his California sentence.

█ Applying *Rojas* to this case, we find that, as an initial matter, the Santa Cruz County Superior Court correctly awarded petitioner credit against his Santa Cruz County sentence for his time spent in pretrial custody up until December 11, 1991, the date he was sentenced on the Santa Cruz County charges. Because petitioner's Santa Cruz conviction occurred first, that was the sentence against which the credit should have been applied. And once the credit was awarded, it in effect became part of the sentence for those crimes. In other words, at that point, before the Santa Cruz County conviction was reversed, *Rojas* would apply to prohibit credit for any of petitioner's custody (both before his trial for the Santa Cruz County charges as well as after he was sentenced for those crimes) to reduce his Monterey County sentence (with the exception of the four days he spent in Monterey County jail before his Santa Cruz County arrest).[3]

But once the appellate court reversed petitioner's Santa Cruz County conviction, he was returned to a situation indistinguishable from that of a defendant who had been charged in that county, but never tried. When Santa Cruz County dismissed its charges, the "custody to be credited" (i.e., the time petitioner had spent in local custody pursuant to the Monterey County hold, both before and after the date of the Santa Cruz County sentencing) became "attributable [solely] to proceedings related to the same conduct for which the defendant has been convicted" (§ 2900.5(b)), i.e., the proceedings in this case. The Monterey County Superior Court thus properly awarded petitioner credit for his custody from the time of the hold until the date of his sentencing in Santa Cruz County. It erred, however, in failing to award him

---

[3]The record shows that the Monterey County Superior Court awarded petitioner credit from the time of the hold until he was sentenced in Santa Cruz County. This was error under *Rojas,* as that time in custody had already been credited to his sentence in Santa Cruz County and was thus solely attributable to his conviction in that county. The issue is moot, however, because after petitioner's Santa Cruz County conviction was reversed on appeal and the charges dismissed, the time in custody from the hold until his Santa Cruz County conviction became attributable to the Monterey County charges, and the time is now properly credited against his sentence in Monterey County.

credit for his custody following his sentencing in Santa Cruz County, up to and including the date of his sentencing in Monterey County.

Although the plain language of section 2900.5 supports a decision to grant petitioner credit for the latter period and nothing in *Rojas, supra,* 23 Cal.3d 152, precludes it, respondent argues we should nonetheless deny petitioner additional credit because we have, in the past, applied a rule of "strict causation" to credit cases involving multiple restraints. Thus, for example, we held in *Bruner, supra,* 9 Cal.4th 1178, that "where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint." (*Id.* at pp. 1193-1194.) Relying on this holding, respondent contends that "it is apparent that petitioner's Monterey County case had absolutely nothing to do with his confinement in Santa Cruz County" and that "[p]etitioner has failed to show any evidence that he posted bail in the Santa Cruz case or that he could have obtained release but for the Monterey County hold."

This argument is misplaced. The requirement of "strict causation," on which this court relied in *Bruner, supra,* 9 Cal.4th 1178, and *Joyner, supra,* 48 Cal.3d 487, is applicable in cases involving the possibility of *duplicate credit* that might create a windfall for the defendant. Here, because the Santa Cruz County charges have been dismissed, no possibility of a windfall (in the form of double credit) to petitioner exists. Unlike in *Bruner* and *Joyner,* the choice is not between awarding credit once or awarding it twice. The choice is instead between granting petitioner credit *once* for his time in custody between December 11, 1991, and April 2, 1992, or granting him *no credit at all* for this period of local custody.

Respondent also argues that giving petitioner credit in this situation requires that we "transmute" his Santa Cruz County postsentence custody time into presentence custody time attributable to his Monterey County charges. We disagree. As we explained, *ante,* petitioner's custody after Monterey County's August 21st hold originally was attributable to charges in both counties. Once the Santa Cruz County conviction was reversed and the charges dismissed, petitioner's situation was no different than if the Santa Cruz County charges had been dismissed before trial. His custody— attributable originally to both sets of charges—would still be attributable to the remaining charges in Monterey County.

Finally, respondent, like the Court of Appeal, relies on *People v. Huff* (1990) 223 Cal.App.3d 1100 [273 Cal.Rptr. 44]. In *Huff,* the defendant was

on probation for possession of PCP when he was arrested on a new and unrelated charge of auto theft. After spending more than two months in pretrial custody for the auto theft charge, the defendant's probation for possession of PCP was summarily revoked due to the pending theft charge, and he was remanded into custody for the revocation pending sentencing. The auto theft case was then dismissed for failure to prosecute and, about one month later, the defendant was sentenced to prison for his possession of PCP. The defendant sought custody credits against his drug offense sentence for the period commencing with his arrest on the auto theft. The *Huff* court found he was not entitled to such credits because he had not been in custody on the probation violation for the entire period that commenced with his arrest, i.e., his incarceration was not solely attributable to the probation revocation. "While it is true that the new [auto theft] charges were eventually dismissed due to a failure to prosecute, so that there was no resulting sentence against which to credit appellant's time in custody on those charges, that fact does not transmute the custody to time attributable to the old [drug] charges." (*Id.* at p. 1105.)

Because *Huff* is distinguishable on its facts, it is unhelpful here. Petitioner here seeks credit only for the time he spent in custody from the day he was sentenced in Santa Cruz County until the day he was sentenced in Monterey County. As we explain, once the Santa Cruz County conviction was reversed on appeal and the charges dismissed, the time in question became attributable to petitioner's Monterey County conviction. *Huff* would be relevant only if petitioner had sought credit for the time spent in custody from the time he was *arrested* in Santa Cruz County, before Monterey County placed a hold on him, because that period would be analogous to the period in *Huff* commencing with that defendant's arrest for auto theft.

We thus conclude petitioner is entitled to additional credit. All that remains is calculation of the correct amount.

## II. *Calculation of Credits*

■ The Monterey County Superior Court awarded petitioner a total of 229 days of credit, comprised of 153 days of local time and 76 days of conduct credit. Included in the amount of custody credit was credit for the four days he spent in Monterey County jail from the time he was arrested on the Monterey County charges (July 8, 1991) until he was released on bail (July 11, 1991). As respondent acknowledges, the trial court properly awarded credit for these four days.

The same court also properly awarded petitioner credit for the time between the Monterey County hold and his sentencing in Santa Cruz County,

a purported total of 149 days of custody credit. Unfortunately, both dates the court used in its calculations were wrong: the hold was placed on August 21, 1991 (not Aug. 8, 1991), and defendant was first sentenced in Santa Cruz County on December 11, 1991 (not Jan. 3, 1992).[4] Petitioner should have received credit for 113 days of custody.

Contrary to the decisions of both the trial and appellate courts in this case, we find petitioner is entitled to credit for time spent in local custody between the day he originally was sentenced in Santa Cruz County (Dec. 11, 1991) and the day he was sentenced in Monterey County (Apr. 2, 1992). Having already counted December 11 in the previous calculation, we find petitioner is entitled to an additional 113 days of credit (which includes the leap day of Feb. 29, 1992). The total number of custody credit days to which petitioner is entitled is thus 230 days (4 + 113 + 113).

There being nothing in the record suggesting petitioner is disallowed the full amount of conduct credit pursuant to section 4019,[5] we must also calculate his conduct credit. *People v. Smith* (1989) 211 Cal.App.3d 523, 527 [259 Cal.Rptr. 515] explained the applicable method of calculation: " 'Penal Code section 4019, specifies how prisoners may obtain certain credits. Subdivisions (b) and (c) of that section provide: "for each *six-day period* in which a prisoner is confined in or committed to a specified facility" one day shall be deducted from his period of confinement for performing labors, and one day shall be deducted for compliance with the rules and regulations of the facility. Subdivision (f) of that section provides "if all days are earned under this section, a term of six days will be deemed to have been served for every *four days spent in actual custody*." (Italics added.)' [Citation.] [¶] Credits are given in increments of four days. No credit is awarded for anything less. . . . Under the statutory scheme, 'rounding up' is not permitted."

---

[4]Petitioner perpetuates these errors in his briefing before this court, and this error accounts for the discrepancy between the number of custody credits to which we find he is entitled, and the number of credits he claims in his briefing.

[5]Section 4019, subdivision (b) states: "[F]or each six-day period in which a prisoner is confined in [county jail], one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp."

Subdivision (c) of the same section provides: "For each six-day period in which a prisoner is confined in [county jail], one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp."

Subdivision (e) provides: "No deduction may be made under this section unless the person is committed for a period of six days or longer."

Subdivision (f) provides: "It is the intent of the Legislature that if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody."

"Other courts have adopted the *Smith* approach to the calculation of credits." (*People v. Fabela* (1993) 12 Cal.App.4th 1661, 1664 [16 Cal.Rptr.2d 447] [citing several cases].) We do as well.

Employing this approach, we take the number of actual custody days (4 + 113 + 113 = 230) and divide by 4 (discarding any remainder), which leaves 57 (230 ÷ 4 = 57). We then multiply the result by 2 (57 × 2 = 114), resulting in a total of 114 days of conduct credit. To arrive at the total amount of credit to which petitioner is entitled (custody plus conduct), we add the custody credit (230 days) to the conduct credit (114 days), giving us a total of 344 days (230 + 114). Because the trial court had previously awarded petitioner a combined 229 days of credit (custody and conduct), we conclude he is entitled to an additional 115 days of credit (344 − 229 = 115).

### CONCLUSION

The decision of the Court of Appeal is reversed. The trial court is directed to correct the judgment to reflect that petitioner is entitled to an additional 115 days of credit (custody and conduct).

George, C. J., Kennard, J., Baxter, J., Chin, J., and Moreno, J., concurred.

**MORENO, J.,** Concurring.—I agree with the result and reasoning of the majority opinion. I write separately to express my views regarding the majority's discussion of *People v. Huff* (1990) 223 Cal.App.3d 1100 [273 Cal.Rptr. 44] (*Huff*). (Maj. opn., *ante*, at pp. 23-24.) After reciting the facts of *Huff*, the majority states that, "[b]ecause *Huff* is distinguishable on its facts, it is unhelpful here." (Maj. opn., *ante*, at p. 24.) While I agree that *Huff* is "distinguishable on its facts," I am inclined to go further in order to point out that, in *People v. Bruner* (1995) 9 Cal.4th 1178 [40 Cal.Rptr.2d 534, 892 P.2d 1277] (*Bruner*), we endorsed a method of computing presentence custody credits contrary to that utilized in *Huff*.

In 1988, the defendant in *Huff* was placed on three years' probation for possession of phencyclidine. On January 17, 1989, he was arrested for grand theft automobile. He did not post the $15,000 bail and remained in custody. Yet his probation was not revoked until March 27, 1989, more than two months after the date of his arrest. Most importantly, the probation revocation was based *solely* on the grand theft automobile charge. On April 24, 1989, the underlying grand theft automobile charge was dismissed, but, after a probation violation hearing in which the court heard evidence regarding the automobile theft, the defendant was found in violation of probation and his probation remained revoked. (*Huff, supra,* 223 Cal.App.3d at p. 1103.) In

sentencing the defendant, the Court of Appeal declined to award him presentence custody credit for the period of January 17, 1989, through March 26, 1989, for the reason that he was not "in custody" on the probation violation until March 27, 1989, and thus his custody was not attributable to the probation violation until that date. (*Id.* at pp. 1105-1106.)

But in *Bruner*, we stated that "post-[*People v. Joyner* (1989) 48 Cal.3d 487, 489 [256 Cal.Rptr. 785, 769 P.2d 967]] decisions apply a general rule that a prisoner is not entitled to credit for presentence confinement unless he shows that the conduct which led to his conviction was the sole reason for his loss of liberty during the presentence period. Thus, these cases reason, his criminal sentence may not be credited with jail or prison time attributable to a parole or probation revocation that was based only in part upon the same criminal episode. [Citations.] . . . [W]e conclude that these authorities construe the statute correctly." (*Bruner, supra,* 9 Cal.4th at p. 1191, italics omitted.) We then cited, with approval, *People v. Williams* (1992) 10 Cal.App.4th 827, 832-834 [13 Cal.Rptr.2d 107], a case in which the Court of Appeal held that the defendant "was entitled to credit against his sentence for time spent in custody on the probation revocation because this custody arose from the *identical* conduct that led to the criminal sentence." (*Bruner, supra,* 9 Cal.4th at p. 1194, fn. 10, italics added.)

In *Huff,* the Court of Appeal failed to award presentence custody credit where the probation revocation was based on the *identical* conduct that led to the criminal offense. Therefore, the method used to calculate presentence custody credits in *Huff* is contrary to the method we endorsed in *Bruner*.[1]

The majority also states that "*Huff* would be relevant only if petitioner had sought credit for the time spent in custody from the time he was *arrested* in Santa Cruz County, before Monterey County placed a hold on him, because that period would be analogous to the period in *Huff* commencing with that defendant's arrest for auto theft." (Maj. opn., *ante,* at p. 24.) While I agree that *Huff* might be *factually* relevant, it should be noted that, even if petitioner had sought presentence custody credit from the time spent in custody from the day he was *arrested* in Santa Cruz County, *Huff* is not analogous to the present case because the custody credit rules governing the interplay between an underlying crime and probation violation (i.e., a *Huff* situation) are different from the custody credit rules that govern a *Marquez* situation, i.e., where a defendant commits two distinct crimes in two different counties. As noted, in a *Huff* situation, the defendant *is* entitled to

---

[1] In the *Huff*-type of situation, moreover, whether the probation hold precedes or is subsequent to the filing of criminal charges is of no moment because custody credit accrues from the date of arrest.

custody credit from the date of arrest. In a *Marquez* situation, a defendant is *not* entitled to credit from the date of arrest by the first county in the event that charge is dismissed. Instead, he receives credit only from the date the hold was placed by the second county, which makes his custody attributable to both distinct cases.

For the reasons stated above, I would go further than the majority and recognize that the *Huff* situation is not analogous to the facts of the present case and, where a probation revocation is based on the identical conduct that led to criminal charges, the *Huff* court's method of computing presentence custody credits is contrary to the method we endorsed in *Bruner*.

Brown, J., concurred.

On May 21, 2003, the opinion was modified to read as printed above.