Filed 5/28/15  P. v. Pacheco CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ALFRED MICHAEL PACHECO,<br><br>  Defendant and Appellant. | H040512<br>(Santa Clara County<br> Super. Ct. No. C1121040) |

After a jury found appellant Alfred Michael Pacheco guilty of two counts of dissuading or intimidating a witness in violation of Penal Code section 136.1,[1] the trial court placed him on probation on various terms and conditions including that he serve one year in the county jail on each count, to be served consecutively, with credit for time served.

Appellant filed a timely notice of appeal.  On appeal, appellant challenges the sufficiency of the evidence to support his two convictions for intimidating a witness.  In addition, appellant alleges that the trial court misadvised the jury regarding an element of the offenses.  Finally, he argues that the court erred in failing to award him the correct amount of presentence custody credits.  For reasons that we shall explain, we affirm the order of probation.

---

[1] Appellant was charged in count 3 with violating subdivision (a)(2) of Penal Code section 136.1 and in count 4 with violating subdivision (b)(2) of Penal Code section 136.1.

*Facts and Proceedings Below*

On March 15, 2012, in case No. C1121040 (hereafter the witness intimidation case), the Santa Clara County District Attorney filed an information in which it was alleged that appellant attempted to dissuade a victim or witness from testifying in violation of section 136.1, subdivision (a)(2)[2] (count 1), and attempted to dissuade a victim or witness from prosecuting a crime in violation of section 136.1, subdivision (b)(2) (count 2). Eventually, for purposes of trial only, the case was consolidated with case No. C1108628.

Although the record does not contain the charging document in case No. C1108628 (hereafter the lewd acts case), appellant went to trial charged with two counts of lewd and lascivious acts on a child by force or fear (§ 288, subd. (b)(1) counts 1 & 2), one count of attempting to dissuade a victim or witness from testifying (§136.1, subd. (a)(2), count 3), and one count of attempting to dissuade a victim or witness from prosecuting a crime (§ 136.1, subd. (b)(2), count 4). Accordingly, in the consolidated case the two attempted dissuading counts became counts 3 and 4.

On March 18, 2013, the jury deadlocked on the two lewd and lascivious conduct counts with six jurors voting for acquittal. The court declared a mistrial as to those two counts; subsequently, the prosecutor moved to dismiss the charges. However, the jury found appellant guilty on the remaining two dissuading counts.

To give context to this case, we briefly recite the testimony concerning the two counts on which the jury deadlocked. Jane Doe[3] testified that in the early morning hours of February 14, 2011, she woke up to go to the bathroom. When she returned to her bed, appellant, who was at the time her sister's boyfriend, came into her bedroom. Jane stated that appellant touched her vagina over her clothes and tried to force her to orally copulate

---

[2] All unspecified section references are to the Penal Code.
[3] We refer to the complaining witness in this case as Jane Doe to protect her anonymity.

him by pulling her head toward his penis. After a brief struggle, appellant left the room. Jane reported the incident to school officials later that morning after she told a friend what had happened. Thereafter, she spoke to San Jose Police Officer Jonathan Redmond concerning what had happened with appellant.

In February 2011, appellant and Jane's sister were dating. Jane's sister was pregnant with appellant's child.[4] On July 27, 2011, appellant was arrested based on Jane's allegations that he had molested her. On July 31, 2011, appellant telephoned Jane's sister from the county jail. During the telephone call, appellant asked Jane's sister "what's [Jane] gonna say when she goes in?" Jane's sister explained that she had told Jane to "say that she was lying, and . . . she didn't know that you were gonna get in trouble, and the reason she said it is because she didn't like you because . . . you hit me . . . ." Later in the conversation, appellant told Jane's sister to tell Jane "she don't have to say nothing else" and to "just shut her mouth."

Appellant telephoned Jane's sister again on August 16, 2011. After several angry outbursts from appellant, he asked Jane's sister, "Well, who got me in here? Your sister, right? Then fuckin' fix it. It's not that fuckin' hard. You guys are out there like it's fuckin' happy, everything's fuckin' fine. You guys aren't the ones fuckin' in jail. I am. You guys don't fuckin' have to deal with this shit. I fuckin' do. I can't see my fuckin' baby, 'cause your fuckin' sister. What the fuck dude? You think that's cool? You think it's all fuckin' fun? Your fuckin' daughter doesn't have a dad because your fuckin' sister wants to fuckin' get fuckin' attention tantrums? What the fuck dude? That's just not fuckin' cool. Fix that shit. You been saying you're gonna fix it. You haven't done shit.

---

[4] The defense presented the preliminary hearing testimony of Jane's sister. Before trial, Jane's sister was called as a witness in an Evidence Code section 402 hearing. The court appointed counsel to advise Jane's sister. Jane's sister invoked her rights under the Fifth Amendment and refused to testify. Accordingly, the court found her "unavailable" as a witness and held that neither party was permitted to call her as a witness at trial.

Tell me one thing you've done to fix it? Huh? Hello?" Later in the conversation appellant added, "If I put your sister in jail, you'd be fuckin' trying to kill me. You're not doing nothing to her, you don't talk—yell at her or nothing."

On August 19, 2011, again appellant telephoned Jane's sister. Again appellant was angry that nothing was happening. This time he told Jane's sister, "[Y]ou can't even get me out of jail for some shit I didn't do for [*sic*] your little sister. You should beat the fuck out of her. Not fuckin' be nice to her." At the conclusion of the telephone call appellant said, "Just fuckin' fix it. If you have to beat the shit out of your sister to get the truth, do it. Whatever you fuckin' have to do to get the fuckin' truth and have her tell the fuckin' truth . . . then fuckin' do it."[5]

Appellant testified that he was angry with Jane's sister because she was "the only person who [could] talk to [Jane] and she [was] not doing anything."

According to Jane, she had more than one conversation with her sister about testifying at the preliminary hearing in the lewd acts case. Jane's sister told Jane to lie; she was "begging [her] to lie." Jane said she agreed to lie, and her father, who was present during the conversation, called the district attorney's office in an effort to get the charges dropped. Jane testified that her sister texted her "24/7" and wrote messages to her on Facebook begging her to lie.

On September 14, 2011, Jane's father telephoned Margarita Ramirez, an investigator with the public defender's office, and told her that Jane had lied to the police about the lewd touching. Jane's father passed the telephone to Jane; Jane told Ramirez that "nothing had happened with [appellant]." Jane explained to Ramirez that she had lied because "she was upset" with appellant because of "the way he treated" her sister.[6]

---

[5] During the trial, the jail telephone calls were played for the jury.
[6] In August 2010, it appears that Jane telephoned the police after appellant and her sister got into a physical fight and appellant choked Jane's sister.

4

After answering several of Ramirez's questions, Jane said she did not want to speak anymore and hung up the telephone.

At some point before the preliminary hearing in the lewd acts case Jane's father told Jane that she could tell the attorneys she had a "right not to testify." Jane's sister hit her on two occasions before the preliminary hearing. Once, when Jane said she would not tell lies for her, her sister hit her on the side of the face. Jane and her sister argued frequently about the case.

*Discussion*

*Sufficiency of the Evidence*

Appellant argues that there was "no evidence" that Jane had been pressured not to testify or not to cooperate with law enforcement. He asserts that absent evidence that he pressured Jane to refrain from testifying and refuse to cooperate with law enforcement, "there is no evidence to satisfy the element of dissuasion."

As noted, appellant was charged with two different subdivisions of section 136.1. In count 3 he was charged with subdivision (a)(2) and in count 4 with subdivision (b)(2) of section 136.1.

In relevant part, section 136.1 subdivision (a)(2) provides, with exceptions not relevant here, "[A]ny person who does any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] . . . [¶] Knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." In turn, subdivision (b)(2) provides, again with exceptions not relevant here, "every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison: [¶] . . . [¶] Causing a complaint,

5

indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof."

In her closing argument, the prosecutor told the jury that count 3 (§ 136.1, subd. (a)(2)) was based on appellant's attempts to prevent Jane from attending or giving testimony at the preliminary hearing; the prosecutor cited appellant's words "You should be beating the fuck out of her" as evidence that appellant was dissuading Jane from attending the preliminary hearing. The prosecutor asked the jury, "Do you think that beating someone might discourage them from coming to court?" As to count 4, the prosecutor played a portion of the recorded jail telephone call and noted that appellant had told Jane's sister, "Just tell her at that point she doesn't have to say anything else. Say she lied because she didn't like [me], she just wanted attention and then stop talking." The prosecutor argued, "[G]uess what? That's exactly what happened when that defense investigator went out and talked to [Jane] on the phone. That's exactly what happened. [¶] On September 14th, when the defense investigator spoke with [Jane] over the phone, she said, 'I'm lying, I didn't think he would get in trouble. I made it up because I didn't like him.' And then she shut her mouth just like he said. [¶] And when they tried to follow up and say, 'you told the classmate. What's her name,' she hung up the phone. She did just what he wanted her to do. That's interfering with the orderly administration of justice. And that's attempting to prevent her from cooperating with the prosecution. And that's attempting to prevent her from providing information so that a charging document can be sought."

Our role on appeal when there is a challenge to the sufficiency of the evidence is limited. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Our duty is to review the entire record in the light most favorable to the prosecution, to presume in support of the judgment every fact a reasonable trier of fact could reasonably deduce from both circumstantial and direct evidence, and to determine whether the record discloses substantial evidence—credible and reasonable evidence of solid value—such that a

6

reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.) It is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. (*People v. Bean* (1988) 46 Cal.3d 919, 933.) Thus, the "test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Reilly* (1970) 3 Cal.3d 421, 425.)

Under section 136.1, the prosecution must prove that "the defendant's acts or statements are intended to affect or influence a potential witness's or victim's testimony or acts . . . ." (*People v. McDaniel* (1994) 22 Cal.App.4th 278, 284)

Section 136.1, subdivision (a)(2), "neither restricts the means a defendant selects to commit the offense, nor does it require that defendant personally deliver the message to the witness. A threat need not actually deter or reach the witness because the offense is committed when the defendant makes the attempt to dissuade the witness." (*People v. Foster* (2007) 155 Cal.App.4th 331, 335.) Appellant's mandate to Jane's sister to "beat the shit out of" Jane was sufficient evidence of his attempt to prevent Jane from testifying at the preliminary hearing.

Under section 136.1, subdivision (b)(2), the crime is completed once the defendant takes an immediate step toward having another person knowingly and maliciously attempt to dissuade a witness from assisting in a prosecution. (*People v. Velazquez* (2011) 201 Cal.App.4th 219, 230.) From appellant's instructions to Jane's sister to tell Jane to say nothing more than what her sister told her to say (i.e. that she had lied because she did not like appellant) and then "just shut her mouth," the jury could have concluded that appellant was attempting to dissuade Jane from assisting in the prosecution of the lewd acts case. The underlying basis of all the telephone conversations between appellant and Jane's sister was his desire to get out of jail before the preliminary hearing and not have to go to trial. To do that, appellant encouraged Jane's sister to make Jane change her story. In other words, appellant, through Jane's sister, was attempting to

7

dissuade Jane from "[c]ausing a[n] . . . information . . . to be sought and prosecuted, and assisting in the prosecution thereof."  (§ 136.1, subd. (b)(2)).

In sum, appellant has failed to show that the jury findings under subdivisions (a)(2) and (b)(2) of section 136.1 were unsupported by substantial evidence.

*Jury Question*

*Background*

During deliberations, on March 15, 2013, the jury sent the following question to the court.  "If counts 1 and 2 are found as 'not guilty' even to the lesser charges, can the defendant still be found guilty of counts 3 and 4?  The court gave the attorneys some time to think about an answer.  When the parties returned to court after a weekend break, appellant's counsel told the court that she thought that the proper response to the question was "no."  Counsel explained that she thought the jury would be making a finding that Jane "is indeed not a victim if they were to find [appellant] not guilty of . . . Counts One and Two . . . ."  Counsel continued, "I know the Court indicated an intention to read CALCRIM 3515.  I think that the Court should simply tell the jury to refer back to the instructions."

The prosecutor responded, "[C]learly, they can find him guilty of dissuasion regardless of the verdict on Counts One and Two.  It's not that they're making a finding that she is not a victim, they may be making a finding that it was not proved beyond a reasonable doubt."  The prosecutor went on to say, "The jurors are instructed that each count is a separate offense and must be considered separately.  And just for simple policy reasons, Counsel's belief in the law would lead to a result where, if someone is really good at dissuasion, they can never be convicted of it.  I think if the Legislature intended that you can only be convicted of dissuading a witness if you were also convicted of the underlying crime, they would have made the elements and they didn't."

8

The court agreed with the prosecutor and said that it intended, rather than to answer yes or no, to tell the jury, "Please refer to CALCRIM instruction 3515, Multiple Crimes:  Separate Offenses."

As provided to the jury in this case, CALCRIM No. 3515 told the jury, "Each of the counts charged in this case is a separate crime.  You must consider each count separately and return a separate verdict for each one."

Appellant contends that the court erred in failing to provide, sua sponte, additional instructions to emphasize the elements of dissuasion of a witness, which required that the jury find evidence that Jane was a victim or witness of the charged substantive offense of child molestation.  Appellant argues that in response to the jury question, the court should have instructed the jury regarding the elements of the charges and told the jury, "Review the instructions for each charge.  As set forth in the instructions, Counts 3 and 4 require that you find that [Jane] is a victim or witness of a crime.  [Insofar] as you find evidence of this element beyond a reasonable doubt, appellant may be found guilty of charges 3 and 4, even if he is ultimately acquitted of the charges set forth in Counts 1 and 2."

In essence, appellant equates the alleged instructional error here to a failure to instruct the jury on certain elements of the crime charged.  (See *United States v. Gaudin* (1995) 515 U.S. 506, 510, [federal Constitution requires criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime charged].)  Appellant argues that the trial court failed in its duty to help the jury understand the legal principles at issue in this case, ultimately resulting in misadvisement regarding elements of the section 136.1 charges.  We are not persuaded.

Under section 1138, the trial court has "a duty to provide the jury with the information the jury desires on points of law." (*People v. Smithey* (1999) 20 Cal.4th 936, 985.)  Further, "[t]he trial court has a duty to help the jury understand the legal principles the jury is asked to apply.  [Citation.]  In particular, under section 1138 the court must attempt 'to clear up any instructional confusion expressed by the jury.'  [Citation.]  But

9

'[t]his does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information.' [Citations.] In exercising that discretion, the trial court 'must at least *consider* how it can best aid the jury. It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given.' [Citations.]" (*People v. Giardino* (2000) 82 Cal.App.4th 454, 465.)

Here the court's original instructions were full and complete. The court instructed the jury on the elements of witness intimidation pursuant to CALCRIM No. 2622,[7] which as worded here, apprised the jury that it could not convict appellant of witness intimidation alleged in counts 3 and 4 unless the People proved that Jane "was a witness or crime victim."

Moreover, here, the trial court's response to the jury question was legally correct (See *People v. Beagle* (1972) 6 Cal.3d 441, 456, overruled on other grounds in *People v. Castro* (1985) 38 Cal.3d 301); there was no misstatement of the law. Furthermore,

---

[7] In full, the jury instruction pertaining to counts 3 and 4 told the jury that to find appellant guilty of count 3, the People had to prove that "1. The defendant maliciously tried to prevent or discourage [Jane] from attending or giving testimony at a preliminary examination, a judicial proceeding. [¶] 2. [Jane] was a witness or crime victim; [¶] AND [¶] 3. The defendant knew he was trying to prevent or discourage [Jane] from attending or giving testimony at a preliminary hearing and intended to do so." Similarly, as to count 4, the court told the jury that to find appellant guilty, the People had to prove "1. The defendant maliciously tried to prevent or discourage [Jane] from cooperating or providing information so that a complaint/indictment/information could be sought and prosecuted and from helping to prosecute that action; [¶] 2. [Jane] was a witness or crime victim; [¶] 3. The defendant knew he was trying to prevent or discourage [Jane] from cooperating or providing information so that a complaint/indictment/information could be sought and prosecuted and from helping to prosecute that action." The instruction defined a witness as someone "Who knows about the existence or nonexistence of facts relating to a crime. [¶] OR [¶] Who has reported a crime to a peace officer or prosecutor."

appellant's argument—that in being advised to separate the offenses, the jury was permitted to overlook an element of section 136.1—makes little sense. We fail to see how the court's instruction to reread CALCRIM No. 3515, which told the jury that the counts were separate crimes, could have baffled the jury, as he asserts, such that they would have been confused as to the elements of the offenses.

Appellant's entire argument is based on his flawed understanding that the jury was required to find that he molested Jane, i.e., find him guilty on the lewd acts counts, in order to find him guilty of the witness intimidation counts. That the jury hung six to six on the lewd acts counts does not establish definitively that the offenses did not occur; simply put, it establishes only that the prosecution did not prove beyond a reasonable doubt that the offenses occurred. Jane was still a witness—that is someone who "reported a crime to a peace officer or prosecutor." If we were to accept appellant's argument, a criminal defendant would have free rein to intimidate witnesses to increase the chance that the witnesses would not testify. This in turn would increase the chance of an acquittal. Then, once an acquittal was obtained, the defendant could not be found guilty of violating section 136.1 since it was not proved that an underlying crime occurred. The fallacy of this position is apparent. (Cf. *People v. Cribas* (1991) 231 Cal.App.3d 596, 611 & fn. 11 [the defense argument, taken to its logical conclusion, would mean a person who bribed a witness could not be prosecuted if acquittal on the underlying charge results from the suborned perjury].)

Simply put, if there is a prosecution and the evidence proves insufficient for conviction, the underlying offense is not diminished. There is nothing in the phrase "who reported a crime to a peace officer or prosecutor" from which we must conclude it means a crime that has actually been committed. More to the heart of the matter, even an acquittal does not mean a crime did not occur; it simply relieves a defendant of culpability.

11

In sum, we reject appellant's assertion that the trial court erred in failing to provide additional instructions in response to the jury's question.

*Custody Credits*

As noted, appellant was arrested in the lewd and lascivious conduct case on July 27, 2011. On December 5, 2011, in the witness intimidation case, the prosecutor filed a felony complaint in which appellant was charged with one count of witness intimidation based on his conduct on or between July 30, 2011, and October 14, 2011. Later the prosecutor added a second count of witness intimidation in an information that was filed March 15, 2012. On December 16, 2013, the court sentenced appellant for his convictions on the two witness intimidation charges. Appellant's trial counsel argued that appellant's credits should be calculated from the date of his initial arrest—July 27—because the cases were consolidated and "fundamental fairness" dictated that he should get credits from his arrest date.

Appellant contends that the trial court erred when it calculated his presentence custody credits using a start date of December 5, 2011, instead of July 31, 2011, the date of the first recorded jail call.

A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities. (§ 2900.5, subd. (a);[8] *People v. Buckhalter* (2001)

---

[8] In full, section 2900.5 provides: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in a jail . . . all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, and including days credited to the period of confinement pursuant to Section 4019 . . . shall be credited upon his or her term of imprisonment . . . . If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. . . . [¶] (b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

26 Cal.4th 20, 30 [everyone sentenced to prison for criminal conduct is entitled to credit against his or her term for all actual days of presentence confinement solely attributable to the same conduct].)  Calculation of custody credit begins on the day of arrest and continues through the day of sentencing.  (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.)

Appellant asserts that two California Supreme Court cases, *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*) and *In re Marquez* (2003) 30 Cal.4th 14 (*Marquez*), support his claim for additional credits.

In *Bruner*, *supra*, 9 Cal.4th 1178, a warrant issued for the defendant's arrest for three alleged parole violations.  When parole agents served the warrant, they found rock cocaine in the defendant's possession.  The defendant was cited for possession of cocaine and released on that charge on his own recognizance.  Nonetheless, he remained in custody under a parole hold.  The Board of Prison Terms revoked the defendant's parole based on the three alleged violations and his possession of cocaine, and imposed a prison term of 12 months.  While the defendant was serving that term, he pleaded guilty to the charge that he possessed cocaine, and was sentenced to prison for 16 months.  The trial court found that the defendant was not entitled to any presentence custody credits on the current charge.  The California Supreme Court affirmed the trial court's ruling.  The Supreme Court held: "[W]here a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint.  Accordingly, when one seeks credit upon a criminal sentence for presentence time already served and credited on a parole or probation revocation term, he cannot prevail simply by demonstrating that the misconduct which led to his conviction and sentence was 'a' basis for the revocation matter as well." (*Id*. at pp. 1193-1194.)

13

The *Bruner* court concluded that "when presentence custody may be concurrently attributable to two or more unrelated acts, and where the defendant has already received credit for such custody in another proceeding, the strict causation rules of [*In re*] *Joyner* [(1989) 48 Cal.3d 487] should apply." (*Bruner*, *supra*, 9 Cal.4th at pp. 1180.) In *Bruner*, since the defendant received credit for all presentence custody in his parole revocation proceeding, and he failed to demonstrate that "but for" the cocaine possession leading to his current sentence he would have been free, or at least "bailable," during that presentence period, he was not entitled to duplicative credit against his current sentence. (*Id.* at p. 1181.)

*Marquez*, *supra*, 30 Cal.4th 14, involved a defendant convicted of burglary in Monterey County and convicted of an unrelated burglary in Santa Cruz County. The defendant had been in custody in Santa Cruz County continuously since his arrest for the Santa Cruz County burglary. (*Id*. at p. 17.) He was sentenced for the Santa Cruz County burglary before being sentenced for the Monterey County burglary. (*Id*. at p. 18.) Eventually, this court reversed and dismissed the Santa Cruz County conviction. Subsequently, the defendant sought credit for time spent in custody from the time he was sentenced in the Santa Cruz County case until he was sentenced in the Monterey County case. (*Ibid*.) The defendant argued that once the Santa Cruz County conviction was reversed and dismissed, his confinement was attributable to the Monterey County case. (*Id*. at p. 19.) The California Supreme Court agreed, holding that this approach was consistent with the plain meaning of section 2900.5, subdivision (b). (*Marquez*, *supra*, at p. 20.)

The *Marquez* court found that *Bruner's* rule of " 'strict causation' " did not change the result. (*Marquez*, *supra*, 30 Cal.4th at p. 23.) It held that this rule "is applicable in cases involving the possibility of *duplicate credit* that might create a windfall for the defendant." (*Ibid*.) Since the Santa Cruz County charges were dismissed, there was no threat of awarding defendant the windfall of double credits. The *Marquez* court noted:

14

"The choice is instead between granting petitioner credit *once* for his time in custody between December 11, 1991, and April 2, 1992, [the time between sentencing in the Santa Cruz County case and sentencing in the Monterey County case] or granting him *no credit at all* for this period of local custody." (*Ibid.*)

Appellant has the burden, as the party claiming credit, to demonstrate his entitlement to credit for any particular period. (*People v. Huff* (1990) 223 Cal.App.3d 1100, 1106.)

Since the facts regarding appellant's actual time in custody are undisputed, his claim presents solely a question of law. Accordingly, we apply the de novo standard of review and give no deference to the trial court's ruling. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *People v. Bravo*, *supra,* 219 Cal.App.3d at p. 732.)

At the outset, it is important to note that this is not a duplicative credits case. Therefore, *Bruner*, *supra*, 9 Cal.4th 1178 does not apply. The prohibition in section 2900.5, subdivision (b) against duplicate credits would not be violated by awarding credits as appellant contends because he does not seek duplicate credits for the time he was in custody from July 31, 2011, the date of the first jail telephone conversation, until December 5, 2011, the date when charges were filed in the intimidation case; and the date from which the court awarded presentence credits.

As the *Marquez* court explained, the respondent argued that application of the rule of "strict causation" precluded an award of additional credits in that case. The court disagreed and explained: "This argument is misplaced. The requirement of 'strict causation,' on which this court relied in *Bruner*, *supra*, 9 Cal.4th 1178, and [*In re*] *Joyner*, *supra*, 48 Cal.3d 487, is applicable in cases involving the possibility of *duplicate credit* that might create a windfall for the defendant. Here, because the Santa Cruz County charges have been dismissed, no possibility of a windfall (in the form of double credit) to petitioner exists. Unlike in *Bruner* and *Joyner*, the choice is not between awarding credit once or awarding it twice. The choice is instead between granting

15

petitioner credit *once* for his time in custody between December 11, 1991, and April 2, 1992, or granting him *no credit at all* for this period of local custody." (*Marquez*, *supra*, 30 Cal.4th at p. 23.)

Similar to *Marquez*, resolution of the credit issue in this case turns on the interpretation of the following phrase: Credit shall be given *only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted*. Thus, we turn to whether the "custody to be credited" (§ 2900.5(b)) in this case, the period between the first jail telephone call—July 31, 2011, and the day the prosecution filed charges in the witness intimidation case—can be deemed "attributable to proceedings related to the same conduct for which [appellant] has been convicted" (*ibid*.), i.e., to the witness intimidation case proceedings. We determine that it cannot.

The witness intimidation case did not commence until December 5, 2011, the day that the Santa Clara County District Attorney filed charges. Effectively, even though appellant was already in custody for the lewd acts case, he was "taken into custody" on the witness intimidation case on that date.[9] The sole reason for his confinement during the period of time at issue was the lewd acts case. Accordingly, he is not entitled to the extra credit that he desires. Although dismissal of the lewd acts case leaves appellant with no sentence against which credit for the period at issue can be applied, as the *Marquez* court recognized, "[s]ometimes this result is unavoidable." (*Marquez*, *supra*, 30 Cal.4th at p. 20.) For example, if the witness intimidation case had never been filed and appellant had gone to trial on only the lewd acts case and thereafter the same result occurred—that is, a hung jury and dismissal of all charges—there would be "no sentence against which credit for [any period of presentence custody] could be applied." (*Id*. at pp. 20-21.)

---

[9] Appellant has failed to demonstrate that anything happened in his witness intimidation case before that date.

16

Appellant's attempt to argue that because the witness intimidation charges required that he attempt to dissuade a witness or victim in the lewd acts case, he was in custody during the identified period based on the charges in the witness intimidation case is unavailing. We reiterate that charges in the witness intimidation case were not filed until December 5, 2011. In short, there were no "proceedings" in the witness intimidation case until December 5, 2011.

## *Disposition*

The order of probation is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.