Filed 7/6/23  P. v. Kephart CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ROBERT LEE KEPHART,<br><br>　　　　Defendant and Appellant. | C096842<br><br>(Super. Ct. Nos. P20CRF0094,<br>22CR1288) |

Defendant Robert Lee Kephart's sole argument on appeal is that the trial court's failure to apply excess custody credits accrued on a subordinate term to the then principal term resulted in "dead time" in contravention of *In re Marquez* (2003) 30 Cal.4th 14, 20 (*Marquez*) and its progeny.  We disagree and will affirm.

1

# I

## FACTUAL AND PROCEDURAL BACKGROUND

On February 25, 2020, defendant pled no contest to possessing a controlled substance for sale (Health & Saf. Code, § 11351) in El Dorado County Superior Court case No. P20CRF0094 (the 2020 drug case) and in exchange received a split sentence of one year six months in jail with two years six months on mandatory community supervision (Pen. Code, § 1170, subd. (h))[1] under specified terms and conditions.

Nearly 28 months later, defendant was charged with willfully inflicting corporal injury on a spouse resulting in a traumatic condition (§ 273.5, subd. (a)) in El Dorado County Superior Court case No. 22CR1288 (the 2022 domestic violence case). The prosecution also sought to revoke his mandatory community supervision in the 2020 drug case because of this new law violation.

On July 21, 2022, defendant pled no contest to the sole count in the 2022 domestic violence case and also admitted he had violated his mandatory supervision in the 2020 drug case. In exchange, defendant would receive a low-term sentence of two years in the 2022 domestic violence case and a consecutive one-year term (one-third the midterm) in the 2020 drug case.

Prior to sentencing, defendant filed a custody credit brief seeking to apply the excess custody credit from the 2020 drug case to the term associated with the 2022 domestic violence case. The prosecution opposed this request.

Thereafter, on August 2, 2022, the trial court sentenced defendant in accordance with his plea agreement. The parties submitted the custody credit issue on the briefs, and the court issued its ruling, finding defendant's authorities distinguishable and denying his request to apply excess credits from the 2020 drug case to the 2022 domestic violence

---

**1**      Undesignated statutory references are to the Penal Code.

2

case. Rather, the court found because defendant was not arrested on the 2022 domestic violence case until June 20, 2022, defendant was not entitled to have the credit earned before that date applied to the two-year term associated with the 2022 domestic violence case. Nonetheless, the court awarded defendant the custody credit attributable to the 2022 domestic violence case—44 actual days plus 44 conduct days for a total of 88 days' custody credits.

Defendant timely appealed and complied with section 1237.1 by presenting his custody credit arguments in the trial court at the time of sentencing.

## II

## DISCUSSION

Defendant challenges the trial court's failure to apply excess credits earned in the 2020 drug case to defendant's principal two-year term for the 2022 domestic violence case. Specifically, he complains the trial court's failure to apply his excess custody credits has resulted in dead time in contravention of *Marquez, supra*, 30 Cal.4th 14 and its progeny. While we agree defendant has excess credits on the 2020 drug case, we do not agree they should be applied to the term associated with the 2022 domestic violence case.

Custody credits are case specific—they accrue only in the case in which they are earned. (§ 2900.5, subd. (b); *In re Joyner* (1989) 48 Cal.3d 487.) Here, defendant argues the trial court should have applied the excess credits from the 2020 drug case to the 2022 domestic violence case. Contrary to defendant's assertion, however, the excess credits cannot be credited to the 2022 domestic violence case because they were not earned in that case.

Section 2900.5, subdivision (b) specifies custody "credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single

3

period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (See also *People v. Lathrop* (1993) 13 Cal.App.4th 1401, 1403.) "The crucial element of the statute is not where or under what conditions the defendant has been deprived of his liberty but rather whether the custody to which he has been subjected 'is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted.' (§ 2900.5, subd. (b).)" (*In re Watson* (1977) 19 Cal.3d 646, 651; accord *In re Rojas* (1979) 23 Cal.3d 152, 156.)

Recognizing that there may be instances where a defendant is in custody that is attributable to multiple cases, a strict causation rule has developed to limit defendants from obtaining a windfall of duplicative credits. (See, e.g., *People v. Bruner* (1995) 9 Cal.4th 1178, 1191.) Thus, if a period of custody "stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint." (*Id*. at pp. 1193-1194.)

Moreover where, as here, multiple proceedings lead to terms imposed by the last sentencing court, the "attributable" requirement of section 2900.5 still governs.[2] Credits are not reallocated; they remain strictly assigned to the proceedings in which they were earned. (*People v. Lacebal* (1991) 233 Cal.App.3d 1061, 1066 (*Lacebal*); *People v. Adrian* (1987) 191 Cal.App.3d 868, 877 (*Adrian*).) " 'Therefore, if the last court orders consecutive sentences and the credits earned on the terms ordered to run consecutive exceed the resulting one-third of middle base terms imposed, the consecutive terms are

---

[2]    Defendant has provided no authority establishing that the trial court's duty to pronounce one aggregate prison term at sentencing (§ 1170.1; Cal. Rules of Court, rule 4.452(a)) alters these long-established rules.

"served," but the excess credits are not available to reduce the unrelated full base term. [Citations.]' [Citation.]" (*Lacebal*, at p. 1066.)

Here, the credits awarded in the 2020 drug case were based upon periods of custody and supervision that predated defendant's arrest in the 2022 domestic violence case, and as such, those credits were not attributable in any way to the 2022 domestic violence case. Under these circumstances, reallocating the excess custody credits in the 2020 drug case to the 2022 domestic violence case would violate the "attributable" requirement. (§ 2900.5, subd. (b).)

It is well established that where, as here, the credit on a subordinate consecutive term exceeds one-third of the midterm imposed, excess credit may not be used to reduce the unrelated principal term. (*Lacebal, supra*, 233 Cal.App.3d at p. 1066; *Adrian, supra*, 191 Cal.App.3d at p. 877; *People v. Brown* (1984) 156 Cal.App.3d 1131, 1134-1135.) The *Lacebal-Adrian-Brown* line of cases has interpreted section 2900.5 to preclude defendant's view that he is entitled to a reallocation of credits to avoid so-called dead time. (*Lacebal*, at pp. 1064-1066; *Adrian*, at pp. 876-877 ["credits are not reallocated: they remain assigned only to the proceedings in which they were earned"]; *Brown*, at pp. 1134-1136.)

Defendant argues that we should not follow the *Lacebal-Adrian-Brown* line of cases because these authorities predate and are "at odds" with the Supreme Court's decision in *Marquez* and the authorities following it. None of defendant's cases support his position, as they are all readily distinguishable. Each of these cases involves instances where excess credits accrued during custodial periods attributable to multiple, yet separate cases. (*Marquez, supra*, 30 Cal.4th at p. 20 ["after Monterey County placed a hold on petitioner, his custody was attributable to the charges in *both* counties"]; *People v. Gonzalez* (2006) 138 Cal.App.4th 246, 252 [custody attributable to " 'multiple, unrelated causes' "]; *People v. Torres* (2012) 212 Cal.App.4th 440, 447 [custody between sentencing in two cases attributable to both cases]; *People v. Phoenix* (2014)

231 Cal.App.4th 1119, 1128-1129 [custody attributable to both cases such that once resentenced in one matter, excess credit could be applied to the other]; *People v. Shropshire* (2021) 70 Cal.App.5th 938, 948-949 [same].) Thus, these cases do not speak to the propriety of allocating credit to a case not in existence when that credit was accrued. (See, e.g., *Marquez, supra*, 30 Cal.4th at pp. 22-23 [because the earlier action had been dismissed, the strict causation rule did not prohibit the awarding of credit for the period where the latter case had placed a custody hold on the defendant then in custody in the earlier action].)

Nothing in *Marquez* signals an intent to discard the "attributable" requirement for the awarding of custody credit. In point of fact, *Marquez* expressly acknowledged that dead time is sometimes unavoidable. (*Marquez, supra*, 30 Cal.4th at pp. 20-21.) Defendant's stipulated sentence results in one of those instances.

### III
### DISPOSITION

The judgment is affirmed.

 

/s/
EARL, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
KRAUSE, J.