Filed 2/7/23  P. v. Ruscigno CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>THOMAS JAMES RUSCIGNO,<br><br>      Defendant and Appellant. | A164332<br><br>(Sonoma County<br>Super. Ct. No. SCR-739680-1) |

Defendant Thomas Ruscigno pleaded guilty in Sonoma County to various charges arising from his theft of a catalytic converter, including grand theft and receiving stolen property.  Before sentencing, he was taken into custody in Contra Costa County, where he later pleaded guilty to and was sentenced on unrelated charges.  He makes three arguments on appeal, that:  (1) his sentence on the receiving stolen property count should have been stayed under Penal Code section 654[1], (2) the trial court incorrectly calculated his custody credits, and (3) a $50 registration fee imposed must be vacated under newly-enacted legislation.  We agree with the first and third argument, and reject the second, and thus stay the sentence on the receiving stolen property count and vacate the registration fee.

---

[1] Further undesignated statutory references are to the Penal Code.

# BACKGROUND[2]

On May 30, 2020, at 3:19 a.m., an officer responded to a call from a residence regarding "sawing noises," which the caller believed could be "someone stealing a catalytic converter." The officer spoke with the caller, who said he heard a power saw and saw a vehicle approximately 100 feet from his residence. The officer noticed a nearby Toyota Prius, and further inspection revealed the vehicle's catalytic converter was missing and appeared to have been cut out.

Meanwhile, another officer conducted a traffic stop of Ruscigno's vehicle, and observed "a car jack, a cordless Sawzall, and what appeared to be a catalytic converter, all in plain view on the back seat." Ruscigno's shirt "had dirt on the back but not the front, as if he had been lying on the ground on his back." Ruscigno was detained and a records check indicated his license was suspended. After Ruscigno consented to a search of his vehicle, a small plastic bag of methamphetamine was found under the driver's seat.

On July 24, the Sonoma County District Attorney filed a felony complaint charging Ruscigno with grand theft (§ 487, subd. (a)) (count 1), receiving stolen property (§ 496, subd. (a)) (count 2), vehicle tampering (Veh. Code, § 10852) (count 3), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) (count 4), and driving with a suspended license (Veh. Code, § 14601.2, subd. (a)) (count 5). At Ruscigno's arraignment, the trial court appointed a public defender, and indicated that "[t]here is a $50 registration fee, and fees will be assessed based upon your ability to pay."

On March 26, 2021, after a discussion with counsel, the trial court indicated that if Ruscigno entered an open plea and made restitution by the

---

[2] The factual background is drawn from the presentence report.

2

time of sentencing, it would reduce count 1 to a misdemeanor and sentence him to 10 days in custody and 50 hours of community service to be completed during one year of probation. Ruscigno then entered a plea of no contest to all five counts, and a sentencing hearing was set for June 21.

On June 21, Ruscigno failed to appear, and the court issued a bench warrant for his arrest.

The sentencing hearing ultimately took place on December 27, 2021. The trial court indicated that in the meantime, on August 2, Ruscigno had been arrested in Contra Costa County, and on September 17, he was convicted of fleeing a pursuing peace officer's vehicle while driving recklessly (Veh. Code, § 2800.2) and sentenced to a prison term of two years. He was awarded 52 days of actual credit and 52 days of conduct credit in the Contra Costa case, for a total of 104 days.[3] The trial court in this matter then sentenced Ruscigno to the middle term of two years on count 1 and the middle term of two years on count 2, to run concurrent to each other and to the sentence in the Contra Costa case. On the remaining three misdemeanor counts, the court sentenced Ruscigno to 30 days in county jail.

The presentence report calculated Ruscigno's custody credits as follows. Ruscigno was awarded 1 day for his arrest and release on May 30, 2020. For the period August 2, 2021 through September 17, 2021, the report calculated 0 days actual credit, with this explanation: "The defendant received credit for time served for this time period towards his Contra Costa County case 02-234994-1. He is not entitled to overlapping custody credits in this matter within the meaning of *In re Joyner* [(1989)] 48 C[al].3d 487. Should the Court wish to sentence the defendant concurrently and grant all applicable credits

---

[3] The abstract of judgment in the Contra Costa case is part of the record in this appeal.

3

through 09/17/21, credits for this time period would be 48 + 48 = 96 days." For the period September 18 through December 6, the report calculated 0 credits, because "[t]he defendant is currently a sentenced prisoner and is not entitled to the dual use of credits."

At sentencing, defense counsel took the position that Ruscigno was entitled to credits from August 2, 2021 until the present, which would be "148 actual, 148 conduct, for 296 days of credit."

The trial court stated that it would, over defense objection, rely on the probation department's credit calculation, and awarded 48 actual plus 48 conduct, for 96 days of credit.

Ruscigno filed a notice of appeal.

## DISCUSSION

Ruscigno argues that (1) the trial court should have stayed the sentence on count 2 under section 654, (2) the trial court erred in calculating his custody credits, and (3) to the extent the $50 registration fee was imposed, it must be vacated under Assembly Bill No. 177.[4]

**The Sentence on Count 2 Must Be Stayed under Section 654**

We distilled the applicable law in *People v. Deegan* (2016) 247 Cal.App.4th 532:

" ' "In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." ' " ' (*People v. Correa* (2012) 54 Cal.4th 331, 337; see § 954.) 'Section 654 bars separate

_____

[4] In his opening brief, Ruscigno also argues that the minute order must be modified to conform to the oral pronouncement of judgment on the misdemeanor offenses. On reply, Ruscigno has withdrawn this argument.

4

punishment for multiple offenses arising out of a single, indivisible course of action.' (*People v. Neely* (2009) 176 Cal.App.4th 787, 800.) Its purpose is 'to ensure that a defendant's punishment will be commensurate with his culpability.' (*Correa*, at p. 341.)

" ' "If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated. If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses. It is the singleness of the act and not of the offense that is determinative." (*People v. Knowles* (1950) 35 Cal.2d 175, 187.) [¶] The "singleness of the act," however, is no longer the sole test of the applicability of section 654. " 'Section 654 has been applied not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute . . . within the meaning of section 654.' [*People v. Brown* (1958) 49 Cal.2d 577, 591.] [¶] Whether a *course of criminal conduct* is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective of the actor*. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; italics added.)' (*People v. Beamon* (1973) 8 Cal.3d 625, 637, fn. omitted, disapproved on other grounds in *People v. Mendoza* (2000) 23 Cal.4th 896.)" (*People v. Deegan*, *supra*, 247 Cal.App.4th at pp. 541–542.)

5

"Whether multiple convictions are based upon a single act is determined by examining the facts of the case." (*People v. Mesa* (2012) 54 Cal.4th 191, 196.) Intent and objective are also "factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) A trial court's imposition of multiple sentences must be sustained on appeal so long as its factual findings, express or implied, of multiple acts or multiple intents and objectives are supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730–731; *People v. Cruz* (2020) 46 Cal.App.5th 715, 737.) Accordingly, we review the trial court's imposition of multiple sentences " 'in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence.' " (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378.)

If the trial court does not stay a sentence pursuant to section 654, and offers no factual basis for its decision, we presume the court found that the defendant harbored a separate intent and objective for each offense. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1147.)

Here, there was no discussion at sentencing of section 654. Accordingly, we must affirm the sentence if an implied finding that section 654 does not apply is supported by substantial evidence. (See *People v. Osband*, *supra*, 13 Cal.4th at pp. 730–731.) And we conclude there is none.

Ruscigno argues that the sentence on count 2 should have been stayed under section 654 because there was no evidence that he had a different intent or objective in receiving the stolen catalytic converter than he did in stealing it. (See *People v. Allen* (1999) 21 Cal.4th 846, 867 [where defendant

6

convicted of burglary and receiving the same stolen property, staying execution of sentence on receiving stolen property count is "correct" disposition under section 654].) The Attorney General concedes that there is no such evidence. Indeed, the presentence report—the only source of factual background regarding the offenses in the record—recommended that because "the theft of the catalytic converter in Count I was necessary to effect the possession of the same stolen property in Count 2, and the defendant was found in possession of the item immediately following the report of sawing noises where the affected vehicle was located," the sentence on count 2 be stayed under section 654. Because no substantial evidence in the record supports any implicit finding by the trial court that Ruscigno had a separate objective in his commission of receiving stolen property than in his commission of grand theft, section 654 requires that the sentence on count 2 be stayed.

The Attorney General argues, however, that Ruscigno has forfeited his section 654 argument by failing to raise it below, relying on the general rule that only "claims [of error] properly raised below and preserved by the parties are reviewable on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) The Attorney General is wrong. As our Supreme Court explained in *People v. Hester* (2000) 22 Cal.4th 290: "Ordinarily, a section 654 claim is not waived by failing to object below. '[T]he waiver doctrine does not apply to questions involving the applicability of section 654. Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' (*People v. Perez* (1979) 23 Cal.3d 545, 549–550, fn. 3.) This is an exception to the general rule that only those claims properly raised and preserved by the parties are reviewable on appeal. This exception is not required by the

language of section 654, but rather by case law holding that a court acts in excess of its jurisdiction and imposes an unauthorized sentence when it fails to stay execution of a sentence under section 654. (See *People v. Scott*[, *supra*,] 9 Cal.4th [at p.] 354, fn. 17.)" (*People v. Hester*, *supra*, 22 Cal.4th at p. 295; see *People v. Brents* (2012) 53 Cal.4th 599, 618 ["Although defendant did not make [his section 654] argument in the trial court, we will consider it on the merits"]; *People v. Vasquez* (2020) 44 Cal.App.5th 732, 738; *People v. McCoy* (2012) 208 Cal.App.4th 1333, 1338.)

We will modify the judgment to stay the sentence on count 2 under section 654.

**Ruscigno Has Not Demonstrated Error in the Trial Court's Custody Credit Calculation**

In his opening brief, Ruscigno argues that "all the time [he] spent in custody between his arrest in Contra Costa County on August 2, 2021 and sentencing in the current case on December 27, 2021, was attributable to his conduct and conviction in Contra Costa County . . . [t]he trial court should have included these 148 days of actual credits, along with the 46 days of conduct credits (from August 2, 2021 through September 17, 2021) on the abstract of judgment." On reply, he clarifies that he "did not contend that he was entitled to custody credits on both cases," but that he is entitled to one day actual credit in this case, and 148 days (August 2 through December 27), plus 46 days of conduct credit (August 2 through September 17) in the Contra Costa case.

We reject this argument. With respect to the custody credit calculation in this matter, Ruscigno did receive 48 days of credit for the period between his arrest on August 2 and his sentencing in Contra Costa on September 17. And he is not entitled to custody credits in this case for any custody after September 17, when he began serving his sentence in the Contra Costa

8

matter. (See § 2900.5, subd. (b) ["credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted"]; Couzens & Bigelow, Sentencing Cal. Crimes (The Rutter Group 2022) § 15:12 ["Once a defendant begins serving a sentence in one case, *no further pre-sentence credits are awarded in any other case*, even when the sentences are imposed concurrently"].) Even to the extent that this period of custody was attributable to both cases, Ruscigno cannot obtain credit for it unless the Sonoma County matter was a "but for" cause of that custody. (See *People v. Bruner* (1995) 9 Cal.4th 1178, 1193–1194 ["where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint"]; *In re Joyner* (1989) 48 Cal.3d 487, 492–500; Couzens & Bigelow, *supra*, § 15:12.)

*In re Marquez* (2003) 30 Cal.4th 14 (*Marquez*), on which Ruscigno relies, is inapposite. In that case, the defendant was sentenced first in Santa Cruz County, and then sentenced in Monterey County on unrelated charges several months later. (*Id*. at p. 20.) The Santa Cruz conviction was reversed on appeal and the charges subsequently dismissed, and the defendant then sought custody credit for the period in between the sentencings toward his sentence in Monterey County. (*Id*. at p. 18.) Our Supreme Court held that once the Santa Cruz case was dismissed, the custody at issue became "attributable" to the Monterey Case within the meaning of section 2900.5, because, "[u]nlike in *Bruner* and *Joyner*, the choice is not between awarding credit once or awarding it twice. The choice is instead between granting petitioner credit *once* for his time in custody . . . or granting him *no credit at*

9

*all* for this period of local custody." (*Marquez, supra,* 30 Cal.4th at p. 23.) Here, there has been no dismissal of either case as in *Marquez,* and the "strict causation" rule of *Bruner* and *Joyner* is applicable.

**The $50 Registration Fee Must Be Vacated**

Although the record does not reveal the statutory basis for the $50 fee, it was presumably imposed pursuant to former section 987.5, subdivision (a), which provided that "[e]very defendant shall be assessed a registration fee not to exceed fifty dollars ($50) when represented by appointed counsel." On September 18, 2020, the Governor signed Assembly Bill No. 1869 (2019–2020 Reg. Sess.), which amended section 1465.9, subdivision (a), to provide in relevant part that beginning July 1, 2021, "[t]he balance of any court-imposed costs pursuant to . . . Section 987.5 . . . , as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated."[5] (§ 1465.9, subd. (a); see Stats. 2020, ch. 92, § 62.) The parties agree that to the extent it was imposed, the portion of the judgment imposing this $50 fee must be vacated. We agree and vacate the fee. (See *People v. Clark* (2021) 67 Cal.App.5th 248, 259–260.)

**DISPOSITION**

The abstract of judgment is modified to stay the sentence on count 2 under section 654, and the judgment is vacated to the extent that it imposes a $50 fee pursuant to former section 987.5. As modified, the judgment is affirmed.

---

[5] The parties' briefs state that this change was made under Assembly Bill No. 177 (2021-2022 Reg. Sess.), signed on September 23, 2021, but that legislation expanded the provisions to which Assembly Bill No. 1869's debt cancellation applies. (See Stats. 2021, ch. 257, § 35.)

_____
Richman, Acting P. J.


We concur:



_____
Miller, J.



_____
Markman, J. *






*People v. Ruscigno* (A164332)


     *Superior Court of Alameda County, Judge Michael Markman, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.