Filed 12/19/22  P. v. Martinez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079544 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1103343) |
| JORGE ALEJANDRO MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Mark E. Johnson, Judge.  Affirmed as modified, with directions.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Eric A. Swenson, Junichi P. Semitsu and Marvin E. Mizell, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Jorge Alejandro Martinez of first degree murder (Pen. Code, § 187, subd. (a); count 1) and found true allegations that in committing the offense he personally used a deadly and dangerous weapon, a rock, within the meaning of Penal Code sections 12022, subdivision (b) and 1192.7,

subdivision (c)(23). The court sentenced him to 25 years to life on count 1 plus a one-year enhancement for the personal use of a weapon.

Martinez contends his counsel was constitutionally ineffective for failing to ask the court to instruct the jury with CALCRIM No. 522 that evidence of provocation may reduce a first degree murder conviction to second degree murder. He maintains while his counsel made a reasonable tactical choice to advocate in favor of a complete acquittal because the evidence did not establish he was involved in the victim's death, it was nevertheless unreasonable not to request CALCRIM No. 522 in the likely event the jury found him guilty of murder, and thus we should reverse his conviction. Martinez also contends, and the People concede, his abstract of judgment should be amended to (1) reflect the court properly awarded him 3,647 days of presentence custody credit for actual time served and (2) state he was convicted by a jury. We agree with the People's concession, modify the judgment, and direct the court to amend the abstract accordingly. We otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2011, the dead body of Sergio Corona was found in bushes off the side of a road in a commercial area of Perris. Corona was on his back, with an extremely large amount of blood around his head and a sock and shoelace wrapped around his neck. He had sustained trauma to his forehead and had post-mortem burns to the left side of his body. Corona was unclothed from the waist down. He was wearing a partially-burned shirt and had a pair of shorts resting on top of his genitals. A piece of asphalt and rock, covered in Corona's blood, was found next to the body. A stick lodged in Corona's throat had knocked one of his teeth loose and caused injuries to his

2

palate. A pathologist determined Corona died from a combination of blunt-impact injuries to his head and ligature strangulation.

Investigators found several items near Corona's body: a Pala Casino employee badge, an empty snack food bag, two foam cups, a belt buckle, a can of beer, and a beer bottle inside a paper bag.

A waitress at a nearby restaurant later told police that on the previous Saturday before Corona's body was found, she saw Corona leave the restaurant with another man who looked like Martinez. Both men left with beer-filled foam cups, which matched the cups found near Corona's body.

In early July 2011, police searched Martinez's residence, which was the garage of a house. They found a pair of shoes that later was determined to have Corona's DNA on them.

Blood found on one of the foam cups matched Corona's DNA, and a criminalist determined Martinez's fingerprint was on that cup. Blood on the shoelace tied around Corona's neck, the rock, and the chunk of asphalt matched Corona's DNA.

A Pala Casino employee testified that his employee badge was stolen from his vehicle while he was attending an Alcoholics Anonymous meeting in Perris. Martinez's niece, who lived in the house where Martinez was living, testified that in 2011, she and Martinez attended Alcoholics Anonymous meetings in Perris. She told investigating police that she had recently seen Martinez putting new shoelaces in his everyday shoes. According to her, Martinez drank beers with Corona; Corona was Martinez's drinking buddy, but he referred to Martinez as a homosexual in derogatory Spanish terms.

## DISCUSSION

### I. *Claim of Ineffective Assistance of Counsel*

#### A. *Background*

During trial, the court discussed jury instructions with counsel and offered that it seemed that instructions on the degrees of murder—first degree, second degree, voluntary and involuntary manslaughter—"should be given all the way down." Martinez's counsel responded: "I think only if that's sua sponte, your Honor. But our position was it wasn't us." When the court questioned the answer, counsel again stated: "It wasn't us. We didn't do it. We weren't there." The court asked what counsel wanted in terms of lesser offense instructions, and counsel replied: "I think those are appropriate lesser [offense instructions]. We're not requesting lessers." After the court observed it liked to err on the side of giving the jury lesser offense instructions and trusting jurors' ability to decide, counsel reiterated: ". . . [W]e're not requesting any lessers. And if the lessers were given, I would include in my argument—in my closing argument that the lessers are inapplicable because [of] the nature of our defense."

After the close of evidence, the court revisited the issue, specifically asking defense counsel to weigh in: "I've been trying to figure out what [murder instructions] I should give, obviously first and second degree murder. But I see no evidence of a voluntary [manslaughter], heat of passion, or any of the other grounds. Is anybody asking for an involuntary [manslaughter instruction]? [¶] . . . "I mean, sometimes I just give a bunch of lesser [offense instructions]. But I don't know here. [¶] Defense, do you want involuntary manslaughter?"

Defense counsel stated: "Your Honor, strategically we cannot ask for a lesser [offense instruction] given our state of our defense. We would in fact

4

argue against a lesser due to the nature of our defense or argue against the murders and their lessers in their entirety."

The court responded: "So I would just give first and second degree murder. That kind of seems like it. When you have a strangulation and a rock on the head, it's not sounding like an involuntary manslaughter to me."

The People argued to the jury that Martinez premeditated and deliberated Corona's murder; that while the murder was probably driven by some amount of anger and name-calling, it became an act of deliberation given the number of blows to Corona's head and Martinez's use of two ligatures, including a double-knotted shoelace—to strangle Corona. The People emphasized that Martinez did not have to start the night wanting to kill Corona, it was only necessary that at some point he decided he was going to kill him, then did so.

Pointing out there were no eyewitnesses and no physical or evidentiary connection to Martinez, defense counsel argued the People did not have proof beyond a reasonable doubt that Martinez committed the murder. He argued all of the evidence raised reasonable doubt, characterizing it as speculative and blaming the case on an inadequate investigation and prosecution. Defense counsel challenged whether the evidence proved beyond a reasonable doubt that the death was even a homicide at all, or if it was, that Martinez did it.

B. *Contentions*

Martinez contends his first degree murder conviction must be reversed for prejudicially ineffective assistance because his counsel did not request that the jury be instructed with CALCRIM No. 522 as to the effect of

5

provocation on reducing the degree of murder to second degree.[1]  Martinez points out "the record affirmatively illuminates why defense counsel did not request CALCRIM No. 522 or any other instructions on potential lesser offenses.  Specifically, defense counsel was repeatedly asked about instructions on lesser offenses, and . . . repeatedly said he was not requesting any such instructions because he intended to argue appellant was not involved in the offense in any manner and he wished to force the jury into an all-or-nothing choice on the murder charge."  Martinez acknowledges his counsel's decision to advocate in favor of a complete acquittal was a reasonable tactical choice.  However, he maintains given the "slim to none" likelihood the jury would find he did not kill Corona, it was patently unreasonable for counsel not to request the jury be given CALCRIM No. 522 in the event it did determine he was guilty of killing Corona.

The People point out that, as Martinez concedes, his counsel had an obvious tactical reason for choosing not to request CALCRIM No. 522, namely that counsel relied on the defense that Martinez was not the killer, and thus the decision does not constitute deficient performance.  They argue: "Given that [Martinez] was seeking a full acquittal, defense counsel had an obvious reason not to highlight whether he felt provoked when he killed Corona.  If defense counsel had done so, he would have lost a great deal of credibility with the jury because that argument would have directly conflicted with his primary defense that appellant was not the killer."

---

[1]    In part, CALCRIM No. 522 provides:  "Provocation may reduce a murder from first degree to second degree . . . .  The weight and significance of the provocation, if any, are for you to decide.  [¶]  If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder."

6

In reply, Martinez maintains the People have misconstrued his argument.  He asserts that contrary to their suggestion, his counsel did not need to inconsistently argue in favor of a provocation defense, only to ask the court to instruct the jury with CALCRIM No. 522 in the event the jury determined Martinez was the killer.  According to Martinez, the instruction would not have highlighted the People's case any more than instructing the jury on first and second degree murder.  Martinez argues that having the jury in this case be instructed with CALCRIM No. 522 was required by minimum Sixth Amendment standards of effective representation.

C.  *Standard of Review*

We apply well-settled standards to Martinez's claim of ineffective assistance of counsel.  (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)  "A defendant must demonstrate that: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to the defendant.  [Citation.]  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  [Citation.]  ' "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " [Citation.]  "[W]e accord great deference to counsel's tactical decisions" [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation].  "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts." ' "  (*Ibid*.; see *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

D. *Analysis*

Martinez concedes his counsel's choice not to *argue* provocation to the jury was reasonable. Thus, in our view, Martinez's arguments necessarily acknowledge that his counsel's failure to request the giving of CALCRIM No. 522 was part of the same conscious strategic assessment. Informed strategic choices are "virtually unchallengeable . . . ." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 690; see also *In re Gay* (2020) 8 Cal.5th 1059, 1076 [quoting *Strickland*].) Under these circumstances, we are unpersuaded by Martinez's assertion that his counsel's related decision not to request the provocation instruction was professionally indefensible.

In light of the fact that we must accord great deference to counsel's tactical decisions (*People v. Stanley*, *supra*, 39 Cal.4th at p. 954; *People v. Mickel* (2016) 2 Cal.5th 181, 198), on this record we cannot say no reasonable attorney could have concluded that the giving of CALCRIM No. 522—in effect offering the jury a compromise alternative—might weaken the argument for acquittal. (See *People v. Wader* (1993) 5 Cal.4th 610, 643 [not ineffective assistance for counsel to forego instruction on voluntary intoxication when instruction was inconsistent with defendant's theory of the case].) As such, counsel's actions did not fall "outside the wide range of professionally competent assistance" (*Strickland v. Washington*, *supra*, 466 U.S. at p. 690) under prevailing professional norms. (*People v. Arredondo* (2019) 8 Cal.5th 694, 711; *People v. Mai* (2013) 57 Cal.4th 986, 1009.)

When counsel exercises such reasonable professional judgment, it is not for us to second-guess it in hindsight. (*People v. Woodruff* (2018) 5 Cal.5th 697, 762 [" 'A reviewing court will not second-guess trial counsel's reasonable tactical decisions' "].) In sum, Martinez's defense counsel did not render ineffective assistance. We need not address prejudice.

8

## II.  *Corrections to Abstract of Judgment*

Martinez asks that his abstract of judgment be modified to correct errors with respect to his presentence custody credits and the basis for his conviction.  The People concede both suggested corrections should be made, and we agree.

### A.  *Presentence Custody Credits*

At sentencing and without objection from the People, the trial court awarded Martinez 3,647 days of presentence credit, consisting of 1,434 days of presentence custody in the state hospital[2] and 2,213 actual days for local time served.  Given Martinez's murder conviction, the court was prohibited from awarding conduct credits.  (Pen. Code, § 2933.2, subd. (a) ["any person who is convicted of murder, as defined in [Penal Code s]ection 187, shall not accrue any credit, as specified in [Penal Code s]ection[s] 2933 or . . . 2933.05"].)  The abstract of judgment, however, reflects only 2,213 days of presentence credit for actual time served.  The court's oral pronouncement controls (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; *People v. Whalum* (2020) 50 Cal.App.5th 1, 15), so we will modify the judgment and direct the trial court to correct the abstract of judgment accordingly.  (Accord, *In re Marquez* (2003) 30 Cal.4th 14, 26; *People v. Pettigrew* (2021) 62 Cal.App.5th

---

2      In August 2013, the trial court declared a doubt about Martinez's competency to stand trial and suspended proceedings.  In May 2015, it ordered Martinez committed to a state hospital and the probation report indicates he was sent there on June 9, 2015.  The court reinstated criminal proceedings in 2018, after finding Martinez was malingering and mentally competent for trial, and he was released from the state hospital on May 13, 2019.  The People correctly agree that credit for actual time served includes time spent in a state hospital while mentally incompetent to stand trial.  (See *People v. Mendez* (2007) 151 Cal.App.4th 861, 864.)

477, 502 [Court of Appeal may correct error in presentence custody credits in the first instance].)

B. *Conviction by Jury*

We additionally direct the trial court to correct the abstract of judgment—which by check mark erroneously indicates Martinez was convicted by guilty plea—to reflect that Martinez was convicted by a jury.

## DISPOSITION

The judgment is modified to reflect an award of 3,647 days of presentence custody credit and to reflect that Martinez was convicted by a jury. The trial court is directed to prepare an amended abstract of judgment reflecting these custody credits and correcting the other error, and to send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.

10