Filed 6/22/23  P. v. Lewis CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047349 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1646378) |
| v. | |
| MICHAEL JAMESLEE LEWIS, | |
| Defendant and Appellant. | |

Defendant Michael Jameslee Lewis shot at several moving vehicles over the course of a few months in 2016 near Blossom Hill Road in San Jose.  He was convicted by jury of 11 counts of assault with a semiautomatic firearm and related offenses.  He argues on appeal that insufficient evidence supports his convictions for two of the 11 counts of assault with a semiautomatic firearm because the ballistics expert could not determine whether the lead fragments recovered from two vehicles came from a semiautomatic firearm.  In addition, the parties agree that the trial court erred in calculating and applying presentence custody credit, and that defendant is entitled to the benefit of sentencing legislation enacted while this appeal was pending.  We conclude sufficient evidence supports defendant's convictions, but we will reverse the judgment and remand the matter for the limited purpose of resentencing to reflect statutory changes and to correct the presentence credit error.

# I. TRIAL COURT PROCEEDINGS

Defendant was charged by amended information with 11 counts of attempted premeditated murder (Pen. Code, §§ 664, 187; counts 1, 4, 7, 10, 13, 16, 19, 22, 25, 28, and 31), including special allegations that he personally discharged a firearm (Pen. Code, § 12022.53, subd. (c)); 11 counts of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b); counts 2, 5, 8, 11, 14, 17, 20, 23, 26, 29, and 32), including special allegations that he personally used a firearm (Pen. Code, § 12022.5, subd. (a)); 11 counts of shooting at an occupied vehicle (Pen. Code, § 246; counts 3, 6, 9, 12, 15, 18, 21, 24, 27, 30, and 33); possession of a firearm as a felon (Pen. Code, § 29800, subd. (a)(1); count 34); possession of ammunition as a felon (Pen. Code, § 30305, subd. (a)(1); count 35); reckless driving while evading a peace officer (Veh. Code, § 2800.2, subd. (a); count 36); misdemeanor resisting arrest (Pen. Code, § 148; count 37); and misdemeanor driving with a suspended license (Veh. Code, § 14601.1, subd. (a); count 38).

## A. TRIAL EVIDENCE

The jury heard evidence about 11 incidents in which vehicles were shot by a firearm at night on or near Blossom Hill Road between May and August 2016. Defendant does not contest the jury's implicit determination that he was the shooter in all of the charged events. His appellate argument is limited to challenging the evidence supporting the jury's implicit findings that he used a semiautomatic firearm when committing two of the shootings. We therefore focus our factual summary on the two challenged shootings, two additional shootings that occurred in close temporal proximity to the challenged shootings, and relevant ballistics evidence.

### 1. Shootings on July 21, 2016

Defendant challenges the sufficiency of the evidence supporting the assault with a semiautomatic firearm on Brandon Nguyen (count 17).[1] Brandon Nguyen testified he left

---

[1] Because two unrelated victims have the surname, we refer to them by their full names.

a gym around 1:00 a.m. the night of July 21, 2016 and started driving home. He drove on US-101 South, exited at Hellyer Avenue, and turned left at a stop sign. A car without its headlights on passed him in the opposite direction. Brandon Nguyen stated he "heard a bang, and I saw in my rear view mirror, like, debris." He saw "debris of black cloth" in the back seat of his car. He stopped his car a short distance later and inspected it for damage. He saw a small hole in the middle of the rear driver's side door. His parents called the police the next morning. Officers responded, searched his car, and found a suspected bullet fragment lodged in a hole in the backseat.

Another shooting occurred about an hour later. Alexander Bailey left a friend's house in the Blossom Hill area after 2:00 a.m. on the same night. Bailey was driving a van on SR-85 toward SR-87, approaching the Blossom Hill Road bridge. He heard "two big loud noises" that he assumed were from a tree branch or other falling debris. The sound came from the passenger side of the van. Bailey drove home, fell asleep, and examined the van after waking up. The right front tire was flat, and there was a hole in the passenger side of the van that Bailey described as a bullet hole. A bullet was recovered from the flat tire.

## 2. Shootings on August 5, 2016

Defendant challenges the sufficiency of the evidence supporting the assault with a semiautomatic firearm on Kyle Chidester (count 32). Chidester testified that he was driving on Blossom Hill Road toward US-101 in San Jose on the night of August 5, 2016 after 8:00 p.m. He passed a vehicle traveling in the opposite direction and heard a loud noise. Chidester stopped his car shortly later and looked for damage. He could not see anything because it was dark. He inspected his car a day or two later in daylight and saw a hole the size of a "quarter or silver dollar" in his driver's side door. A suspected bullet fragment was found inside the car door a few months later when a mechanic opened the door panel.

3

Kevin Nguyen testified that late on the night of August 5, 2016, he left a gym and drove toward home. When he made a turn at "Blossom Hill and Poughkeepsie," he "heard a really loud pop noise." He pulled over and checked his car, but did not initially see any damage. Kevin Nguyen inspected his car more closely the next morning and saw what he described as "two bullet holes," one in the rear driver's side door and one in the rear passenger's side door. Holes on the inside of the doors matched the exterior holes, so he believed a "bullet went completely through [the] entire car." San Jose Police Department officers searched the intersection later that day. They found a .380-caliber shell casing in the median and a "possible bullet fragment."

### 3. Police Investigation

After reviewing video surveillance and license plate scans taken from law enforcement devices in the area near the shootings, police identified defendant as a suspect based on his association with a Dodge Charger identified in the footage. Defendant was later arrested after a high-speed chase in that car.

The police searched defendant's bedroom at the residence where he lived with his mother. An officer located a loaded .380-caliber Grendel P10 semiautomatic pistol in a backpack. Officers also found an unexpended .380-caliber bullet on the floor, a gun holster, a traffic citation with defendant's name on it, the keys to a Kia Spectra, gun cleaner, an empty magazine, a box containing unexpended .380-caliber ammunition, and a box containing unexpended .45-caliber ammunition. A DNA sample collected from the Grendel firearm's trigger matched defendant's DNA.

Samples taken from surfaces in the Charger were tested and indicated the presence of gunshot residue. Gunshot residue was also discovered in samples from the Kia Spectra associated with defendant. Also found in a search of the Spectra were a spent cartridge stamped ".380 auto," and a gun holster.

4

### 4. Ballistics Expert

A Santa Clara County Crime Laboratory criminalist testified as an expert in "ballistics, firearms, and firearm tool mark analysis." He explained that firearms leave marks on bullets and bullet cartridges when they are fired. If a ballistics expert possesses an operative gun that is suspected to be related to a crime, the expert can fire test rounds into a water tank. Those test bullets and cartridges can then be compared with evidence collected in connection with a crime. Firearms imprint "class characteristics" from the manufacturing process that are the starting point for comparison, which include the number of rifling grooves and whether the rifling twists to the right or left. Each firearm also imprints "individual characteristics" unique to that firearm. If markings on a bullet or cartridge collected as evidence match the class characteristics of a suspect firearm, the expert can then compare that evidence to the test rounds to determine if the bullet or cartridge was fired from the suspect firearm.

Bullets or cartridges from five of the 11 shootings matched the .380-caliber Grendel semiautomatic firearm found in defendant's bedroom. Two shootings involved .380-caliber bullets or cartridges that matched the class characteristics of the Grendel firearm but could not be conclusively connected to that particular gun. Four shootings involved .45-caliber semiautomatic bullets or cartridges, and cartridges from two of those shootings matched one another. The samples relating to the two counts defendant challenges on appeal were too damaged to classify as anything other than lead masses. No bullets or cartridges of any caliber other than .380 and .45 were recovered from any of the shootings.

## B. VERDICTS AND SENTENCING

The jury deadlocked on the attempted murder counts, and the trial court declared a mistrial as to those counts. The jury found defendant guilty as charged on the other counts and found true the special allegations associated with those counts. Defendant was sentenced to 32 years in prison, consisting of a principal middle term of six years for

assault with a semiautomatic firearm (§ 245, subd. (b)), plus a four-year enhancement for personally using a firearm (§ 12022.5, subd. (a)); two years consecutive for each of the 10 additional convictions for assault with a semiautomatic firearm (§ 245, subd. (b); 1170.1, subd. (a)), plus a 16-month enhancement for one of the personal firearm use allegations (§ 12022.5, subd. (a), 1170.1, subd. (a)); and eight months consecutive for reckless driving (Veh. Code, § 2800.2, subd. (a)). Punishment for the 11 convictions for shooting at an occupied vehicle was imposed and stayed (§ 654), and defendant was sentenced to concurrent terms on the remaining counts. The court struck the enhanced punishment for nine firearm use allegations. (§ 1385.) The attempted murder counts were dismissed on the prosecution's motion.

## II. DISCUSSION

### A. SUFFICIENT EVIDENCE SUPPORTS COUNTS 17 AND 32

Defendant presents a narrow challenge to the evidence supporting two of his assault with a semiautomatic firearm convictions. He acknowledges that substantial evidence supports the following inferences: that all shootings were committed by the same shooter, that defendant was the shooter, and that defendant disposed of a .45-caliber semiautomatic firearm before he was arrested. Indeed, even as to the two challenged counts, defendant acknowledges substantial evidence supports the lesser included offense of assault with a firearm (§ 245, subd. (a)(2)). The only evidence defendant argues is lacking in those two convictions is proof that he used a *semiautomatic* firearm, because the metal recovered from the Chidester and Brandon Nguyen shootings could be classified by the ballistics expert only as lead masses.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Substantial evidence can include circumstantial evidence and any inferences

6

reasonably drawn from that evidence. (*People v. Brooks* (2017) 3 Cal.5th 1, 57.) We do not reweigh evidence or second-guess credibility determinations. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.) We presume the existence of every fact that the trier of fact could reasonably deduce from the evidence to support the judgment. (*Ibid.*) To overturn a conviction based on insufficient evidence, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

Reviewing the record in the light most favorable to the judgment, the prosecution demonstrated that defendant participated in 11 shootings in the Blossom Hill Road area of San Jose between May and August 2016. All bullets and cartridges from those shootings that could be classified by the ballistics expert came from a semiautomatic firearm—either a .380-caliber semiautomatic or a .45-caliber semiautomatic. Evidence from five shootings matched the individual Grendel .380-caliber semiautomatic firearm found in defendant's bedroom after his arrest. Evidence from two other shootings matched the Grendel's class characteristics, although not conclusively matched to that particular gun. Four shootings involved .45-caliber semiautomatic bullets or cartridges, and cartridges from two of those shootings matched one another. And officers found .380-caliber and .45-caliber ammunition in defendant's bedroom after his arrest. From the foregoing, the jury could reasonably infer that when defendant committed the two challenged shootings, he used one of the semiautomatic firearms he used in the other nine shootings.

That conclusion is bolstered by the evidence from two shootings that occurred on the same dates as those defendant challenges. The Brandon Nguyen shooting occurred around 1:00 a.m. on the night of July 21, while the Bailey shooting occurred roughly one hour later on the same night. The ballistics expert testified that the bullet associated with the Bailey shooting was fired from a .45-caliber semiautomatic firearm. That defendant was shown to have used a semiautomatic firearm within an hour of the challenged

7

Brandon Nguyen shooting supports a reasonable inference he used a semiautomatic firearm in both.

Similarly, the challenged Chidester shooting occurred sometime on the night of August 5, while the Kevin Nguyen shooting happened late the same night. The ballistics expert testified that the cartridge associated with the Kevin Nguyen shooting (discovered in the road median by a peace officer) matched the Grendel .380-caliber semiautomatic firearm found in defendant's bedroom after his arrest. Although the precise timing is not as clear as for the July 21 shootings we have discussed, the foregoing evidence nonetheless supports a reasonable inference that defendant used a semiautomatic firearm during both the Kevin Nguyen and the Chidester shootings.

Defendant argues it is too speculative to infer that he used a semiautomatic firearm in the two challenged shootings. To the contrary, we see that as the most reasonable inference based on the evidence in the record. There is no evidence suggesting use of a third, unidentified firearm in the shootings, much less a firearm that was not semiautomatic. On the evidence presented, it would be pure speculation for jurors to reach such a conclusion. Substantial evidence supports defendant's convictions.

## B. SENTENCING ISSUES

### 1. Presentence Custody Credit

The parties agree that the trial court miscalculated defendant's presentence custody credit. The trial court accepted the probation officer's calculation of actual presentence custody as 1,060 days. We agree with the parties that the correct calculation is 1,061 actual days of presentence custody.

Defendant's conduct credit was correctly limited to 15 percent because the firearm allegations found true by the jury made the conviction offenses violent by statute. (§§ 2933.1, subds. (a), (c); 667.5, subd. (c)(8).) With 1,061 actual days, defendant is entitled to 159 days of conduct credit, for a total of 1,220 days' presentence custody credit.

The trial court also incorrectly applied the presentence custody credit only to certain counts, apparently out of concern that crediting them to the entire sentence would violate section 2900.5, subdivision (b), which provides: "Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." We agree with the parties that applying the presentence custody credit to the entire sentence does not violate that statute. Defendant is not seeking duplicate credit for a single period of custody, but simply to receive presentence custody credit on all counts, rather than effectively losing some of the credit as dead time on some of the counts. (*In re Marquez* (2003) 30 Cal.4th 14, 20 [dead time is "time spent in custody for which [a defendant] receives no benefit"].) We will instruct the trial court on remand to apply defendant's 1,220 days' presentence custody credit to his entire sentence.

## 2. Amendments to Section 654 (Assem. Bill No. 518)

When defendant was sentenced, section 654 precluded multiple punishments for an act or omission punishable in different ways, and also mandated that the single punishment imposed reflect the sentence "that provides for the longest potential term of imprisonment." (Former § 654, subd. (a); Stats. 1997, ch. 410, § 1.) Consistent with that section, the trial court imposed sentence on counts with the higher term (the 11 counts of assault with a semiautomatic firearm) and stayed punishment for the 11 counts of shooting at an occupied vehicle. Section 654 now gives the trial court discretion to select the shorter term of imprisonment. (§ 654, subd. (a).) Under the reasoning of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), the parties agree that defendant is entitled to resentencing. (Accord *People v. Mani* (2022) 74 Cal.App.5th 343, 379.) We also agree and will remand the matter to allow the trial court to exercise its discretion to decide which punishment to stay under amended section 654.

9

### 3. Amendments to Section 1170 (Sen. Bill No. 567)

The trial court used the middle term of six years for assault with a semiautomatic firearm (§ 245, subd. (b)) as the principal term. At the time defendant was sentenced, trial courts had broad discretion under section 1170, subdivision (b) to select the "appropriate term" for offenses having a prescribed sentencing triad. (Former § 1170, subd. (b); Stats. 2018, ch. 1001, § 1.) Amendments to that section now generally require trial courts to select the middle term (§ 1170, subd. (b)(1)), while section 1170, subdivision (b)(6) lists factors that require imposition of the lower term "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." The specified mitigating factors include evidence that the defendant "experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (§ 1170, subd. (b)(6), (b)(6)(A).)

Defendant disclosed to the probation officer that his biological father suffered from drug addiction, and that one of defendant's stepfathers physically abused defendant and his mother. The parties agree the matter must be remanded due to the amendments to section 1170. We will instruct the trial court on remand to consider all relevant information when applying amended section 1170.

### 4. Amendments to Section 1385, Subdivision (c)

Defendant's sentence includes punishment for two firearm enhancements (the trial court having struck punishment for the remaining firearm enhancements). While this appeal was pending, the Legislature amended section 1385 to "enumerat[e] certain mitigating circumstances which the trial court—'[i]n its exercise of discretion'—is to 'weigh[ ] greatly' in favor of dismissal of an enhancement, unless 'dismissal of the enhancement would endanger public safety.' " (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1090; quoting § 1385, subd. (c)(2).) The parties agree that because the case must be remanded for resentencing, the amendments apply to defendant's case.

10

(§ 1385, subd. (c)(7) ["This subdivision shall apply to all sentencings occurring after January 1, 2022."].)  We also agree and will remand the matter for the trial court to consider the amendments to section 1385 when resentencing defendant.

### III.    DISPOSITION

The judgment is reversed.  The matter is remanded for the limited purpose of resentencing, wherein the trial court must exercise its discretion under amendments to Penal Code sections 654, 1170, and 1385.  As of the original sentencing date of August 2, 2019, defendant is entitled to 1,220 days' presentence custody credit (1,061 actual days and 159 days of conduct credit (Pen. Code, § 2933.1)); all presentence custody credit calculated as of the resentencing date is to be applied to the entire sentence the trial court imposes on remand.  After resentencing, the clerk of the superior court is directed to prepare and transmit to the California Department of Corrections and Rehabilitation a new abstract of judgment.

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

**H047349**
*The People v Lewis*